BARRY et al. v. MAXEY.—75 S. W. (2d) 823.

Eastern Section.    March 24, 1934.

Petition for Certiorari denied by Supreme Court, October 20, 1934.

Lee, Cox, Meek & Hier and Charles H. Smith, all of Knoxville, for plaintiffs in error.

Kramer & Kramer, of Maryville, for defendant in error.

PORTRUM, J. The plaintiff, Mrs. N. T. Maxey, sues the defendants, Dr. Thomas R. Barry and Dr. F. K. Garvey, for malpractice, in that she alleges Dr. Barry, assisted by Dr. Garvey, performed a surgical operation upon her, on March 24, 1932, removing her left kidney; and that they negligently left two pieces of gauze, known as gauze sponges, within the wound, which later necessitated the reopening of the wound and probing for the gauze in order to remove it. The reopening operation was performed by Dr. J. H. Shuford, a surgeon, assisted by Dr. Charles L. Hunsucker, both of Hickory, N. C. (the latter being a general practitioner of medicine), where the patient had been removed to be in the home of her daughter during her convalescence. The jury returned a verdict in favor of the plaintiff and against the defendants, and assessed her damages at $4,000.

The plaintiffs in error contend that the suit should be dismissed because there is no evidence to support the verdict. They testified positively that they did not leave the sponges within the wound, and they were corroborated by the positive testimony of the doctor who gave the anesthetic and the nurse who stated that she counted the gauzes used in the operation. Therefore, that circumstantial evidence that does not exclude every reasonable hypothesis cannot be looked to as making an issue which will overcome their positive testimony. It must be conceded in a civil case that the rule is inapplicable, requiring circumstantial evidence to exclude every reasonable hypothesis of the defendant's negligence [Wilson v. Bryant (Tenn. Sup.), 67 S. W. (2d), 133], but where the circumstances establish that another may have been guilty of the negligence causing the injury, then, for the jury to determine which is the negligent party, they must resort to conjecture, and this is not allowable. The plaintiffs in error rely upon this rule of law and another stated in an opinion of the Supreme Court of the United States in the case of Pennsylvania Railway Co. v. Margaret

258

V. Chamberlain, 288 U. S., 333, 53 S. Ct., 391, 393, 77 L. Ed., 819, from which we quote:

"It, of course, is true, generally, that where there is a direct conflict of testimony upon a matter of fact, the question must be left to the jury to determine, without regard to the number of witnesses upon either side. But here there really is no conflict in the testimony as to the facts. . . . There is no direct evidence that in fact the crash was occasioned by a collision of the two strings [of cars] in question. . . . At most there was an inference to that effect drawn from observed facts which gave equal support to the opposite inference that the crash was occasioned by the coming together of other strings of cars entirely away from the scene of the accident, or of the two-car string ridden by deceased and the seven-car string immediately ahead of it.

"We therefore, have a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover. . . .

"And the desired inference is precluded for the further reason that respondent's right of recovery depends upon the existence of a particular fact which must be inferred from proven facts, and this is not permissible in the face of the positive and otherwise uncontradicted testimony of unimpeached witnesses consistent with the facts actually proved, from which testimony it affirmatively appears that the fact sought to be inferred did not exist."

In other words, the effect of the proposition is that, where you have a state of fact proven by unimpeached and uncontradicted witnesses, then you cannot make an issue for the jury by the proof of circumstances which raises a contrary inference when from the positive testimony it affirmatively appears that the fact sought to be inferred did not exist. That is, circumstantial evidence cannot overcome positive, conclusive, uncontradicted, and unimpeached evidence. If the circumstantial evidence excluded every other reasonable hypothesis and pointed directly to the defendants' negligence, then we cannot appreciate the soundness of this last-announced rule. We doubt if the court that announced this rule would apply it in a case where it is shown by circumstances that a surgeon left gauze in the body of his patient, when no other had an opportunity to explore the wound. However, it is not necessary for us to condemn the rule, since the facts of this case do not bring it within the rule. We are of the opinion that the testimony of the plaintiffs in error cannot be classified as uncontradicted

and unimpeached; and it is this character of testimony which makes the rule applicable.

There is no dispute but what two pieces of gauze were found within this wound, about sixty days after the operation, saturated with pus, and the first found was securely embodied in the tissue, for its removal caused severe pain, and, prior to the removal, the five-inch wound had healed with the exception of a place for draining, about the size of the little finger, where a tube had been inserted. We think these facts made it incumbent upon the plaintiffs in error to do more than positively deny that they left the gauze within the wound; they must show that another had opportunity to place the gauze there before they can escape liability, since it is conceded that it is negligent for a surgeon to leave gauze within a wound. They attempt to show this by the testimony of the defendant in error, for the physician who treated her at the home of her daughter in Hickory, North Carolina, stated that he was called to see the patient and examined the wound and found it healed with the exception of the place for drainage, as above indicated, which was inflamed, and he opened the wound about an inch and a half deep and an inch and a half long and packed it with iodoform gauze. The wound continued to give trouble, and a few days later he called in a surgeon, Dr. Shuford, who made one or two operations, opening the wound its entire length of about five inches, and he probed the wound, finding the first piece of gauze, which proved painful to remove, and which was saturated with pus. He did not call the patient's attention to this gauze, but attempted to secrete it by throwing it into a waste bucket and making no comment. He then packed the wound with long strips of gauze, fluffing it, to prevent the edges of the gauze strips from irritating the wound. The gauze that was removed was not fluffed, in the sense that this surgeon fluffed or crumpled his, but was in layers and used in this form for the mopping of blood during an operation.

The family physician, Dr. Hunsucker, a few days later, or about the 9th of June, while treating the wound, discovered another piece of gauze deep within the wound, which he removed and preserved. It is insisted that this evidence does not exclude an inference that Dr. Hunsucker may have packed the gauze through the small opening left for drainage, and, when the surgeon opened the wound, he found the gauze packed by Dr. Hunsucker within the wound. This inference has no proven circumstance to support it; both doctors testify positively that they did not leave the gauze within the wound, and that the gauze was not of a character of gauze used by them. The circumstances testified to by the defendant in error supports her doctor's testimony, and there is no

circumstance proven supporting the inference attempted to be drawn by the plaintiffs in error, except a bare possibility that these doctors could have placed gauze within the wound, and, as stated, the circumstances proven negative this idea and support the positive and uncontradicted testimony of the defendant in error's physicians. The plaintiffs in error deny leaving the gauze within the wound, and the physician and surgeon of the defendant in error positively denies that he left the gauze within the wound, and, since it must be conceded that one of these parties left the gauze within the wound, then it becomes an issue for the jury to determine from the preponderance of the evidence who is responsible for the negligent act.

In our discussion, so far we have treated the plaintiffs in error's testimony as uncontradicted and free from impeachment; and we have heretofore stated that it was not entitled to be classified as uncontradicted testimony, and for this reason we will discuss it briefly.

The plaintiffs in error stated that they used two classes of swabs or sponges in the operation; the smaller is classified and called a fluff, and used for mopping up blood of severed veins and arteries near the surface, and this fluff is about two and one-half inches wide and about three inches long and three or four plies in thickness. The larger is known as a laparotomy sponge. It is a large pack with a tape on it, to which a metal ring is fastened when used in an operation, and the tape and metal ring is a precaution against leaving the sponge within the cavity. A number of these laparotomy sponges were used in the operation under the retractor to prevent bruising the tissue. A retractor is a large mental curved instrument used to hold the incision open in order to furnish proper view and opportunity to work within the wound. The physicians testified that these laparotomy sponges were used as indicated, and not placed within the body, and that the fluffs were used only in the mopping of the blood which occurred near the surface of the wound, and that they were not used within the wound. They further testify that the kidney was elevated to the surface and removed, and that only a small amount of blood remained in the cavity after the removal, making it unnecessary to use sponges. The kidney was found about two and a half inches below the surface, and was about two or three inches in thickness and about four inches in length. The three physicians present testified that they looked within the wound after the operation, and that there was no gauze left within the wound; the fluffs used for the mopping of blood were thrown into a bucket, and the nurse states that she counted the fluffs prior to the closing of the wound, and all were

accounted for. She made no hospital record of the number of fluffs used.

A physician was introduced by the plaintiffs in error as an expert, and he described the method of operating, and he stated that the kidney was elevated to the surface by packing the side with gauze; the plaintiffs in error had testified that no gauze was used within the wound, and they make no attempt to explain how the kidney was elevated to the surface, as they said it was.

At the trial, Dr. Barry was positive that he left no gauze within the wound, but on June 7, 1932, he wrote a letter, from which we quote in part:

"I have just returned from a vacation and received your letter of June 3. I am indeed greatly humiliated over the gauze being left in. Would you mind asking the doctor whether it was a gauze pack or a gauze sponge.

". . . These unfortunate occurrences happen in the best hospitals, but of course does not keep one from feeling very badly about such an accident. I am quite sure now that Mrs. Maxey will quickly recuperate."

The doctor, recognizing the force of this letter, makes an attempt to explain it, but we think the jury was the judge of the reasonableness of the explanation. We could go to greater length in analyzing this testimony to show minor inconsistencies, but we think we have said enough to demonstrate that its weight is a question for the jury, and that it is not of a class to require the trial judge to take the case from the jury.

■ There is assigned for error the conduct of the trial judge in the following particulars:

"When the jury returned into open court, after deliberating for a while, and announced that it was unable to agree upon a verdict, a juror, Tierney, acting as spokesman for the jury, asked that he might be allowed to state how the jury stood. To this the Court replied that he did not care to hear how they stood as to which side any juror was on, but that he would hear how they stood as to number. Thereupon, the Court requested all jurors who agreed with Tierney to stand with him on one side of the Judge's stand, and all jurors who did not agree with Juror Tierney, to stand on the other side of the stand; thereupon ten jurors moved to the side of Juror Tierney, and one juror stood to the other side of the court room, thus leaving the jury divided eleven to one. Thereupon, the Court, in substance stated to the jury that he did not desire any juror to surrender his honest convictions, that each juror was entitled to his individual opinion, but that he desired the jury to again retire in order to see if it might agree upon a verdict, if possible. The foregoing occurrence took place in the

262

presence of the Court. The jury thereupon again retired, and after deliberation, returned into open court and announced a verdict in favor of the plaintiff, and against both the defendants."

Counsel makes this argument in favor of this assignment:

"The said action of the Court in placing a single juror, who up to that time was voting for a verdict favorable to the defendants, in an embarrassing and humiliating position, and marked him, in the presence of the Court, and the parties to the case, and their attorneys and to the public generally, as a single juror who was standing in the way of the verdict, would probably cause a mistrial. While not so intended by the Court, this said action was calculated to bring undue pressure to bear on the one juror and the influence, if not to actually cause him, to surrender his opinion and vote in accordance with the views and opinion of the other eleven jurors."

Opposing counsel states that this argument is of little weight, for the reason that it is common knowledge that, after a mistrial, the public knows the juror who has failed to agree with the majority, and this knowledge has the same weight with the juror as his segregation in an open courtroom.

There is a divided opinion among the courts as to the propriety of an inquiry by the trial judge as to the numerical division of the jury; and the United States Supreme Court holds that it is prejudicial error, and many of the state courts follow the rule announced by the United States Supreme Court. Brasfield v. U. S., 272 U. S., 448, 47 S. Ct., 135, 71 L. Ed., 345; Commonwealth v. Anthony, 91 Pa. Super., 518; State v. Alexander, 66 Mo., 148; Ball v. State, 9 Ga. App., 162, 70 S. E., 888; Alsup v. State, 118 Tex. Cr. R., 388, 39 S. W. (2d), 902. We quote only an excerpt from the first-cited case;

"Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate court and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

In support of this practice, the defendant in error makes this citation from 64 C. J., p. 1047:

"Preliminary to urging the jury to agree, the Court may properly inquire of them the reason for their failure to agree, and ask

them if there is a probability of their agreeing, and in what proportion they are divided."

■ There is quite a difference in ascertaining from the foreman in what proportion the jury is divided and in causing a division in open court. We can see no reason for the division, since the proportion can be determined in a less harmful way. We think the federal rule is the better rule and should be followed by the trial courts; and, if in the judgment of the appellate court, a reasonable probability of injury exists by a division then the practice will be classified as prejudicial error and the case reversed and remanded for a new trial. By statute this court is prohibited from reversing in the absence of a showing of affirmative error, and, when it is probable the disagreement arose over the amount of the damages sustained and not the liability, and the court being satisfied from the evidence that a case of liability has been made out, then it will not reverse for this error. Under such circumstances the court has power to correct the error by a suggestion of a remittitur.

■ There is an assignment of error that the verdict is excessive. The judgment is for $4,000, and in addition no charge has been made for the operation and the hospital expenses, and the plaintiffs in error advanced this fact as augmenting the recovery. But for this insistence they might yet sue and recover their compensation for the operation and the hospital expenses, but since the argument we will consider it on the theory that they are hereafter estopped from insisting upon payment. However, the defendant in error shows that she was required to pay $425 for treatment to her North Carolina physician, which additional treatment was made necessary by the negligent conduct of the plaintiffs in error.

■ Mrs. Maxey was a lady 68 years of age, suffering with a tubercular kidney which was undermining her health, and it is reasonable to infer would have eventually caused her death had it not been removed. She was operated on the latter part of March, and remained in the hospital for two or three weeks, when she was able to take the train and go to the home of her daughter in Hickory, North Carolina, and, because of gauze left within the wound, she was confined to her bed a large part of the time until its final removal in the first part of June, after which time the wound naturally recovered. She was under the care of her physician until the first of the year, or a period of about six months, but the healing of a wound of this character cannot be attributed solely to the negligent injury of the gauze, and it is difficult to say just what part the gauze contributed to her slow recovery after its removal. It is true that the gauze dammed up the wound and obstructed the drainage, causing the poison or pus to permeate her body and perhaps seriously undermined her strength. But her own

evidence showed that her injury was temporary and she has suffered no permanent disability. She has been greatly benefited by the operation, notwithstanding she was caused unnecessary suffering and a delayed recovery on account of the negligence complained of, and we think the permanent benefit should be considered in the measure of her damages. She is entitled to recover only compensatory damages, and not any vindicative damages.

This was a major operation, and the patient was old and was under the influence of an anesthetic, so it was important that the operation be performed in the quickest time possible. The surgeon was not guilty of any culpable negligence; he was putting forth his best efforts to save her, and by mishap negligently left the gauze within the wound. Under such circumstances we think the judgment should be scrutinized to determine that it did not include anything but compensatory damages. We think $2,500 is ample under the facts of this case; and we suggest a remittitur of the sum of $1,500, which, if accepted, the judgment of the lower court will be affirmed. If not, the case will be remanded for a new trial, with costs.

Snodgrass and Thompson, JJ., concur.