### 3143.  BALL v. THE STATE.

1. The principle that a verdict must be the unanimous conviction of the jurors is imbedded in the jurisprudence of this State, and this unanimity must be the voluntary conclusion of all the jurors, uninfluenced by any suggestion or instruction from the judge that might induce one juror to surrender his individual conviction of the truth and to accept the opinion of the other jurors.

2. For a judge in a criminal trial to ask the jurors how they stand is of doubtful propriety, and where, in response to the query, the information is given that the jurors stand "eleven to one," to state that "usually, where the jury stands eleven to one, the one juror comes to the eleven," is presumptively hurtful, although the judge adds to the statement that the question is one of individual conscience, as the eleven might be wrong and the one right.  Unless the verdict is demanded by the evidence, the error disclosed by the above suggestive colloquy requires the grant of a new trial.

DECIDED APRIL 3, 1911.

Indictment for robbery; from Habersham superior court—Judge Kimsey.  December 21, 1910.

*W. S. Erwin, H. H. Dean*, for plaintiff in error.

HILL, C. J.  George Ball was convicted of robbery, and sentenced to imprisonment in the penitentiary for twenty years.  His motion for a new trial was overruled, and he brings error.

The evidence showing the commission of the crime was clear, strong, and uncontroverted.  There is some evidence which identifies the defendant as the criminal, consisting of the rather uncertain opinion of the person who was assaulted and robbed that the defendant was the man who assaulted and robbed him, and slight circumstances of corroboration.  The jurors believed this evidence sufficient, and this conclusion must be accepted by this court.  We do think, however, that the evidence as to identity was weak and unsatisfactory, and for this reason we have more readily come to the conclusion that a new trial should be granted because of a colloquy between the trial judge and the jury which, we think, was a violation of the spirit, if not the letter, of the Penal Code (1910), § 1058.

.After the jury had been out some time considering the case, the judge had them brought back into the court-room and said to them: "I had you brought in, gentlemen, because you sent me word that you were not likely to agree.  I thought, if I had you brought in, perhaps you might ask me some question.  Does any juror wish to ask the court any questions? If so, do so."  A juror answered: "I

would like to know something about the time when he was in the store, when number 11 ran." The court said: "I do not remember much about the time. I do not think A. L. Kimsey swore much about it." The court then had the reporter to read to the jury the evidence of A. L. Kimsey, and asked them how they stood, and one juror answered, "Eleven to one." The judge then sent the jury back to resume their consideration of the case. Subsequently the judge again sent for the jury, when the following colloquy took place: The court: "I have brought you back, gentlemen, as, if you can not agree on a verdict, I might as well declare a mistrial. How does the jury stand now?" Juror: "We stand just as we did before, eleven to one." Court: "Do you think there is any likelihood of agreeing?" Several jurors: "There is not." Court: "Well, usually where the jury stands eleven to one, the one juror comes to the eleven; but, of course, you must be guided by your own consciences, as the one might be right and the eleven wrong. Was there any other question any of you wanted to ask?" One juror: "No, sir." Court: "You can retire, gentlemen, and consider your verdict." Soon thereafter the jury found a verdict of guilty. When this conversation was had between the judge and the jury, counsel for the defendant moved the court to declare a mistrial, taking the position that the statement of the judge to the jury was improper and was calculated to impress the one juror that it was his duty to surrender his conviction and to agree with the eleven. The court overruled this motion, and this colloquy between the judge and the jury is one of the grounds of the motion for a new trial.

We think that it is a dangerous practice, and one of very doubtful propriety from a legal standpoint, for the judge to ask the jury in a criminal case how it stands; and, where the evidence of guilt is weak, the practice becomes pernicious; it is presumptively hurtful when, on information that the jurors stand eleven to one, the trial judge even remotely suggests to the one juror that he ought to surrender his conviction to that of the majority. A juror is usually so responsive to any suggestion made by the judge as to his duty in the trial of a case, or in the consideration of the evidence, that the judge should be careful not to say anything that could possibly be construed by any member of the jury as indicating that it would be proper for him to yield his personal views of the evidence and shift his individual responsibility to the majority. Whatever differ-

ence of opinion may be entertained on the policy of the law of this State in requiring a unanimous verdict, it is unquestionably true that this policy is imbedded in our criminal jurisprudence as one of its cherished principles, and to persons on trial for criminal offenses is one of the most valuable guaranties of life and liberty. Nothing should be said by the judge that could in any manner tend to destroy this great privilege of a jury trial, or in any degree detract from its force and effect.

When the judge told the jury in this case that, where the jury stands eleven to one, the one juror usually come to the eleven, this one juror, who doubtless in this case was for acquittal, may probably have inferred that this declaration by the judge as to the usual conduct of the one juror could be properly followed by him, and that he should abandon his conviction or doubt as to the guilt of the defendant and agree with the other eleven. This is a very rational deduction from the language of the judge, and the reasonableness of this deduction is strengthened by the fact that the jury had been considering the question for some time before the colloquy with the judge, without being able to come to a unanimous conclusion, but that very soon after the colloquy took place a unanimous verdict was returned.

As before intimated, if the evidence in this case were strong and clear as to the identity of the defendant as being the criminal, we should probably treat the statement of the judge as harmless error; but as the evidence on the question of identity is not entirely satisfactory, and, in addition to this, the defendant proved by well-known white citizens that his character was good, as a law-abiding colored man, we are constrained to believe that the statement of the judge to the jury that "usually the one juror comes to the eleven" was sufficient in all probability to have encouraged the one juror to abandon his individual views and convictions, and, in deference to the intimation expressed by the judge, to agree with the eleven.

*Judgment reversed.*

RUSSELL, J., concurring specially. Irrespective of the divergent views of my colleagues on the question of identity, I am firm in the opinion that the judgment refusing a new trial should be reversed on account of unjustifiable influence on the part of the court, and of my conviction that the remarks of the judge tended to unduly influence the juror who was in the minority. I consider that the

verdict upon the facts should be made by the jury without the assist-
ance of the court, and that the judge should never inquire as to how
the jurors stand numerically in their balloting, or other considera-
tion of the case which has been submitted to them.   It is as far as
a judge can properly go to inquire of the jury as to whether there
is any likelihood that they will reach a verdict; and in case there
is any misunderstanding or confusion in regard to the law, it is his
duty to instruct them.   It is very plain to me that to say to the
jury that the one man usually comes to the eleven would tend to
impress the one recalcitrant juror with the idea that he stood low
in the opinion of the court, and was perhaps an obstructionist to the
cause of justice, and, as well remarked by the Chief Judge, this
defect would not be cured by what followed in this case, because to
say that the one might be more conscientious than the eleven might
be received by the juror as ironical rather than apologetic.

POWELL, J., dissenting.   I can not concur with my associates.
To my mind the evidence identifying the accused as the robber is
not weak at all, but is exceedingly strong.   While the person who
was robbed, and who on the witness stand identified the accused
as his assailant, was not personally acquainted with the accused,
still he walked alongside of him and talked with him for nearly a
mile before the assault was made.   Immediately after the robbery
the victim described the robber, and the accused answered that
description.   A little later the accused was arrested, and, being
brought before the victim, was promptly identified.   He then bore
on his face scratches received in some recent scuffle.   His shoes fitted
the tracks found at the scene of the robbery.   He had been seen
to go in the direction of that place shortly before the robbery oc-
curred.   The victim, as a witness, stated that he was positive that
the man on trial was the man who assaulted him, that there was
not only an identity of ordinary physical marks, but that the robber
had an impediment in his speech such as the accused had.   I have
not the slightest doubt of the guilt of the accused.

I can not concur in the view that the remarks of the judge were
either prejudicial or improper.   I think it is highly expedient and
altogether lawful that the trial judge and the jury should frankly
and fully confer with each other as to the prospects of a verdict
being arrived at, when the jury has been out such a length of time
as to indicate the probability of one of those irreconcilable disagree-

ments upon which a mistrial should be declared. It was proper for the judge to know how the jurors stood, in order that he might use sound discretion in determining whether he should declare a mistrial, and it was proper for him to ask how they stood. This is a practice which often and without question has been indulged in by many of the ablest and fairest trial judges of our State, though I frankly confess that it has been avoided by some judges. I can see no just reason for condemning it. For the judge to say to a jury, standing eleven to one, "Usually, where the jury stands eleven to one, the one juror comes to the eleven; but, of course, you must be guided by your own consciences, as the one might be right and the eleven wrong," was, to my mind, a very proper statement. It indicated to the jury that the judge felt that he should not then declare a mistrial, as there was a probability of a verdict being reached, since usually the united opinion of eleven jurors has great weight in removing the doubts from the mind of a single dissenting juror; and this was accompanied by a statement that this was a matter of conscience, and that the one juror might be right and the eleven wrong, thus giving the dissenting juror to understand that, while he should allow the counsels and the united opinion of his fellows to influence him to the same extent that any other reasonable being would be influenced, still that he should not yield assentatorily, but only in the event that his own conscience approved of his yielding. This I believe to be a just guide for the deliberations of jurors. Each juror should give weight to the opinions of his fellows, and a juror finding himself in a decided minority should carefully examine his own views, in the light of the increased probability of his being wrong, but should never yield so as to give apparent assent to a verdict which his mind and conscience do not approve.

Hence, I dissent.