22255.   RATCLIFF et al. v. RATCLIFF.

546

Submitted November 12, 1963—Decided January 10, 1964.

*Cecil G. Hartness, Henderson & Pope,* for plaintiffs in error.
*R. K. Ballew,* contra.

Grice, Justice. A recharge to a dead-locked jury is for consideration here. It was given in a suit to cancel a deed filed in the Superior Court of Fannin County by Mrs. Mollie G. Ratcliff against J. H. Ratcliff, Jr., and Edward J. Ratcliff. Following a verdict for cancellation, the trial court denied the defendants' motion for new trial which embodied six special grounds attacking the recharge, as well as the general grounds. However, the attacks on the recharge are the only issues for determination here since the denial of the general grounds of the motion, as well as adverse rulings on the demurrer to the petition and plea in bar, have been expressly abandoned.

The motion for new trial recites, in substance, that after the jury had deliberated approximately two and a half hours it was brought into the courtroom and, upon inquiry by the trial judge, announced that it was divided ten to two. Later, after it had deliberated a total of about seven hours, it was again questioned by the trial judge as to what progress was being made. It replied that the division remained the same as earlier, ten to two. Thereupon, the trial judge gave the recharge which follows.

"Gentlemen of the jury: You have now been deliberating upon this case for a considerable period of time, and the court deems it proper to advise you further in regard to the desirability of agreement, if possible. The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible, and not for disagreement. It is the law that a unanimous verdict is required and while this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

"This case must be decided by some jury selected in the same

manner this jury was selected, and there is no reason to think a jury better qualified than you would ever be chosen. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of their opinion. Your duty is to decide the issues of fact which have been submitted to you if you can conscientiously do so. In conferring you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. You should ever bear in mind that as jurors you should not be advocates for either side. The aim ever to be kept in view is the truth as it appears from the evidence, examined in the light of the instructions of the court. You may again retire to your room for a reasonable time and examine your differences in a spirit of fairness and candor and try to arrive at a verdict."

The first three special grounds of the motion for new trial are directed to this recharge in its entirety, complaining that it was calculated to unduly impress and influence a verdict without sufficient time for deliberation and determination of the issues; that it was unnecessary, since no reason appeared for it except to urge the jury to arrive at a verdict without proper consideration for the individual opinions of separate jurors; that it was calculated to give the jury no choice but to reach a verdict, since not instructing that it could continue in a disagreement resulting in mistrial; and that it required the jury to agree and unduly imposed upon the jurors the duty of surrendering individual convictions they might have and amounted to coercion to find a verdict.

Special ground 4 is addressed to the following portion of the recharge: ". . . it is still necessary for all the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment." It is urged that this part of the recharge implies that the jury had not

made an examination of the nature called for, that the deliberation, opinions and judgments of the individual jurors were inaccurate, and that the issues and questions should be re-examined, and a different judgment formed. It is also urged that such language required individual jurors to surrender their own opinion for that of others and left no room for them to form and maintain their own judgment; and furthermore, that it implied that failure of individual jurors to reach agreement within the time which had elapsed was sufficient evidence that they did not have proper regard for the judgment of the others.

Special ground 5 relates to the portion instructing that "Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of their opinion." It is insisted that this language does not allow the individual jurors to maintain their disagreement or conviction already formed but insists that they dispose themselves to be convinced by other jurors, to re-examine their opinions merely because others differ with them; and that it tended to urge those jurors in the minority to give over to the majority and surrender their convictions.

Special ground 6 concerns the instruction that "In conferring you should lay aside all mere pride of opinion and bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. You should ever bear in mind that as jurors you should not be advocates for either side." This is objected to upon the grounds that it tended to discourage the individual juror from having, maintaining and expressing his own opinion and tended to cause him to yield it to that of others; that it was calculated to prevent free and conscientious deliberation by individual jurors; that it urged a verdict even though requiring the surrender of conscientious judgments of individual jurors; and that it was erroneous because the trial judge did not caution that jurors were not required to surrender any conscientious conviction.

The content of the foregoing six special grounds, although varying in the words employed, in essence raised but a single

issue: Was this recharge, in whole or in the portions pointed out, of a nature which might tend to coerce or influence individual jurors to surrender conscientious convictions and to accept the opinions of the majority solely in order to reach a verdict, and therefore improper?  Or did it call the attention of the jury to the importance of the case and the trouble and expense it had caused, suggesting the desirability of disposing of it by a final verdict and urging them to make an honest effort to agree, a practice and duty approved many times?

In our view it was the latter, and thus proper.

In arriving at this conclusion reported cases have provided little help.  However, we believe the correctness of our conclusion is apparent from a study of the recharge itself.

While the instruction expressed desirability of agreement, in no way did it tend to force agreement.  Rather, at the beginning it twice conditioned the stated need for agreement and a verdict by the words "if possible," and at the end it specified the further period to be given for deliberation as a "reasonable time."  Furthermore, instead of urging or sanctioning abandonment of conscientious convictions as the price of unanimity, the recharge sought to avoid that interpretation by stating that the verdict "must be the conclusion of *each* juror and not a mere acquiescence of the jurors to reach an agreement," and also by calling attention to their duty to decide the issues of fact "if you can *conscientiously* do so."  (Emphasis ours.)

As to the method of arriving at a verdict, the trial judge instructed that it was necessary for *all* of the jurors to examine the issues and questions with candor and fairness "and with a proper regard for and deference to the opinion of *each other*"; that "*each* juror" should listen to arguments of "other jurors" with a "disposition to be convinced by them," all of which stresses that an attitude of open mindedness should prevail.  (Emphasis ours.) Finally, he instructed that differences should cause "them *all*" to "scrutinize the evidence more closely and to re-examine the grounds of their opinions."  (Emphasis ours.)  This called for no more than each juror's retesting of his position upon the merits of the issues.

For the above reasons we hold that, in the light of the attend-

ant facts and circumstances, the recharge was not subject to the attacks made upon it in whole or in part. Therefore, the judgment denying the motion for new trial, the only assignment of error now insisted upon, is

*Affirmed.   All the Justices concur.*