### 48755. WALKER et al. v. THE STATE.

CLARK, Judge. Walker and Dupree have brought this appeal from convictions on three offenses: (1) Possession of tools for the commission of a crime; (2) use of a motor vehicle license plate for the purpose of concealing a motor vehicle; and (3) possession of firearms during the commission of a crime.

The arrests of defendants resulted from suspicious circumstances observed by Zellner, a Forest Park detective, while on patrol duty in an unmarked car at approximately 7:55 a.m. on August 21, 1972. He noticed a 1969 Chevrolet parked as the sole vehicle in a small shopping center lot near a bank. Observing Walker stooped at the rear of the automobile in what appeared to be the act of changing license tags the detective requested a police department registration check. Before receiving an answer from this request he saw the suspicious vehicle leaving the area. He then followed it to Mountain View in Clayton County where the car was again parked in a lot near a business establishment. Shortly thereafter the tag registration report came back and indicated improper registration. Zellner then asked Clayton County police to investigate but before they took any action the Chevrolet left Clayton County and proceeded into the City of Atlanta. Having followed the automobile Detective Zellner notified the Atlanta police who halted the car. These officers questioned defendants concerning the license tag and were informed that the proper tag was in the trunk. The evidence was conflicting as to whether consent was given for the officers to open the trunk. Upon arrival of another officer defendant Walker was arrested for improper tag registration.

After the driver, Walker, had been placed in the patrol car the police requested defendant Dupree to leave the vehicle. When this was being done the officers observed a rifle butt sticking out from under a raincoat on the rear seat. It developed this was a sawed-off shotgun. Both defendants were then placed under arrest for possession of tools for the commission of a crime. A

further search of the vehicle resulted in discovery of a portion of a female stocking with a knot tied in the top which could be used as a mask. Other items were a loaded pistol, plastic sacks, plastic garbage bags with clothes of different types and a box of shotgun shells. In the glove compartment was found another revolver and a roll of masking tape.

Defendant Dupree in an unsworn statement stated that he asked Walker to bring him to Forest Park to look for a job, that he purchased cigarettes and was returning to Atlanta when stopped by the officers. He said he did not have anything in the car.

Defendant Walker in an unsworn statement stated the vehicle belonged to his father, that he and defendant Dupree came to Forest Park looking for a job, that he knew the shotgun was in the car but it was not hidden, that he didn't know about the shells and the pistol; that the stocking belonged to him; and that he knew the wrong tag was on the car. He denied having given permission for the officers to search the car.

This appeal is on the general grounds and the following special grounds: (1) The search and seizure was illegal; (2) that the state failed to prove the items found in defendants' automobile were tools commonly used in commission of a crime; (3) that the state failed to prove that driving an automobile with improper license tag was a felony; and (4) that the court erred during the sentencing phase in denying defendants their right to make unsworn statements and requiring defendants to be sworn "subject to the rules of evidence."

1. "Attention is . . . called to the rule that in every case where a verdict has been rendered by a jury and has received the approval of the trial court, the evidence given in support thereof must be construed most strongly toward the prevailing party in the trial court, that is, most strongly in favor of supporting the verdict. It must be construed 'in its most favorable light to the prevailing party. . . for every presumption and inference is in favor of the verdict.' [Cits.]" *Ryder v. State,* 121 Ga. App. 796, 798 (175 SE2d 882).

2. After being observed acting suspiciously defendants were stopped for having the wrong license tag on the car. There are conflicts in testimony as to whether they were arrested before the trunk of the car was opened and as to whether defendant Walker consented to the opening of the trunk. Walker did state that he told the officers the correct license tag was in the trunk. "There was direct testimony, although disputed by the

defendants, that they had voluntarily given permission for a search of the automobile." *Shue v. State,* 129 Ga. App. 757, 758 (201 SE2d 174).

Initially on the motion to suppress, "The credibility of the witness is for the trial judge's determination. *Simmons v. State,* 111 Ga. App. 553, 554 (142 SE2d 308). . . Therefore, where there is a conflict in the evidence on the motion to suppress, the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order." *Brisendine v. State,* 130 Ga. App. 249 (203 SE2d 308).

As the search for the tag, if made after arrest, was incidental to the arrest for improper tag registration and as the trial judge's determination that the search of the trunk was a legal search is thus supported by one version of the evidence, we affirm.

According to the testimony, the shotgun was in plain view in the back seat and was seen by the police inadvertently when they asked defendant Dupree to get out of the car. Clearly the officers could seize a gun as a matter of self-protection. A police officer is free to use and seize what he sees in plain sight if he is at a place where he is entitled to be and if exigent circumstances exist which justify a warrantless seizure. Ker v. California, 374 U. S. 23 (83 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234 (88 SC 999, 19 LE2d 1067). After observing the shotgun, defendants were charged with possessing tools commonly used in committing a crime. Search of the car, including glove compartment and trunk, followed. "The search was in connection with a valid arrest and upon reasonable grounds, particularly since the gun was in plain view (*Bass v. State,* 123 Ga. App. 705 (2) (182 SE2d 322); *Moody v. State,* 126 Ga. App. 108 (189 SE2d 889)), and he had acted in a suspicious manner. . . It was not an unreasonable search, and was not proscribed by the constitutional provisions. Moreover, the trunk of the car was opened voluntarily by appellant to enable the officers to make the search. *Young v. State,* 113 Ga. App. 497 (148 SE2d 461); *Ferguson v. State,* 218 Ga. 173 (8) (126 SE2d 798)." *Raymond v. State,* 129 Ga. App. 17 (198 SE2d 430).

Although some of the items seized were not incriminating per se, "The equipment found in the trunk was accordingly also admissible and whether it constituted tools kept for the purpose of committing burglary was a jury question." *Shue v. State,* 129 Ga. App. 757, 758, supra. This language from *Reid v. State,* 129 Ga. App. 41, 43 (4) (198 SE2d 358) is here applicable: " 'Evidence

as to . . . all the circumstances connected with the arrest, are proper matters to be submitted to the jury to be weighed by them for what they are worth.' *Clements v. State,* 226 Ga. 66 (1) (172 SE2d 60) and cits.; *Satterfield v. State,* 127 Ga. App. 528 (6) (194 SE2d 295) and cits. Since the possession of money is not per se incriminating evidence, the jury was entitled to decide whether the defendant's possession of it was for a lawful purpose. . .or whether the possession, in connection with other circumstances, was evidence that the defendant was engaged in an unlawful enterprise. . ."

Therefore we hold the searches and seizures here, though warrantless, were legal since they can be categorized either as consent searches or searches pursuant to arrest or seizure of dangerous weapon in plain view.

3. Defendants contend that the time interval between detective Zellner's first sighting defendants and the arrest was such that there was a sufficient period in which to obtain a warrant. This contention does not fit the realities of the situation. During that time interval defendants' car traveled from Forest Park south to Mountain View and then north to Atlanta. Had detective Zellner gone to obtain a warrant, where would defendants be? Detective Zellner explained that he being in an unmarked car could not stop defendants and make an arrest.

"Although the search of a dwelling is not authorized without a proper search warrant, when the officers have ample time to procure one, a search of a movable vehicle is an exception, provided there is sufficient probable cause for such search. See Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543); *Register v. State,* 124 Ga. App. 136, 137 (183 SE2d 68). The arrest and the search of the defendant's automobile was not without probable cause. Under the facts disclosed here, a search warrant was not necessary, since the police officers had probable cause for a search without a warrant. The court did not err in making a determination that the facts available to the officers at the moment of arrest would have warranted a reasonable belief that an offense had been committed. *Johnson v. State,* 111 Ga. App. 298, 306 (141 SE2d 574)." *Satterfield v. State,* 127 Ga. App. 528 (4), supra.

In the instant case exigent circumstances did exist since the vehicle was in constant motion and the offense of improper tag registration had been established. See also *Miller v. State,* 127 Ga. App. 248, 249 (192 SE2d 915) where a search without a

warrant was upheld when "the peace officers who had the vehicle under surveillance were seen by an occupant of the premises where the vehicle was parked, and the keys were in the ignition of appellant's vehicle making it subject to movement by anyone at anytime. . ."

The evidence showed Detective Zellner did not have time to obtain a warrant and that as soon as the violation was shown and marked police cars with the occupants thereof in police uniforms were present he arrested defendants. Consequently *Yancey v. Fidelity & Casualty Co.,* 96 Ga. App. 476, 480 (100 SE2d 653), is to be distinguished as there "The evidence disclosed that the sheriff and his 'aides' had *turned aside* from any pursuit of the deceased and for two and one-half hours had been engaged in duties foreign to such pursuit, that during this time they had passed near the homes of two or more magistrates from whom a warrant for the arrest of the deceased could have been obtained, but that no effort was made to obtain a warrant for his arrest." (Emphasis supplied.)

4. Defendants further contend that the trial court wrongfully charged Code Ann. § 68-9916 (b): "It shall be unlawful to buy, steal, sell, receive, dispose of, conceal, possess, or use any motor vehicle license plate upon or in conjunction with the possession of any motor vehicle except the motor vehicle for which the plate was issued for the purpose of concealing or misrepresenting the identity of any motor vehicle which is required to bear a license plate." The offense under the above Code section is a felony whereas defendants contend that if they have committed an offense they should be charged with a misdemeanor in violation of Code Ann. § 68-434a (e): "A person who removes a registration license plate from a vehicle or affixes to a vehicle a registration license plate not authorized by law for use on it, in either case with intent to conceal or misrepresent the identity of the vehicle or its owner, is guilty of a misdemeanor."

The evidence presented is sufficient to support either offense and the trial court correctly charged the jury that they were to determine which, if either of these offenses defendants had committed. Our examination of the jury charge discloses that the enumerations of error attacking these instructions are without merit.

5. Defendants contend that the indictment charging defendants with possession of tools commonly used to commit a crime is unsupported by the evidence. See Code Ann. § 26-1602. The tools

consisted of the guns, a cut-off stocking which was knotted so that it could be used as a mask, sunglasses, fur-lined gloves, a raincoat, black leather hats, masking tape and the license plates. Defendants argue that these are ordinary items usually found in a car and not burglary tools.

The evidence linking these items with burglary tools was testimony to the effect that the stocking could be used as a mask, and that having fur-lined gloves in August was unusual. These are then admissible under *Shearer v. State,* 128 Ga. App. 809, 810 (198 SE2d 369).

The guns obviously are offensive weapons. The state contends that since "offensive weapon" is part of the definition of armed robbery (Code Ann. § 26-1902), it would be a jury question as to whether in these circumstances defendants' intent was to use the guns to commit armed robbery.

"Intent in such a case is not a presumption of law, but a matter of fact for the jury. 'Being a secret operation of the mind it can only be ascertained by the acts and representations of the party.'" *Farlow v. State,* 59 Ga. App. 881, 883 (2 SE2d 500) quoting from Trogdon v. Commonwealth, 31 Grattan (Va.) 862, 872.

The license tags being improperly used together with these facts and the "possession of the tools was sufficient to authorize the jury to find that the tools had been possessed with an intent to use them in the commission of a crime." *Shearer v. State,* 128 Ga. App. 809, 811, supra. See also *Cunningham v. State,* 128 Ga. App. 789, 790 (1) (197 SE2d 871) and *Shue v. State,* 129 Ga. App. 757, 758, supra.

6. "While there is considérable evidence in the record to authorize the jury to have found the defendant not guilty, or guilty of a lesser offense, yet, since the jury in criminal cases is the arbiter of all conflicts, and having resolved such issues against the defendant, and there being evidence to support the verdict, the court did not err in rendering final judgment on the verdict." *Fraley v. State,* 120 Ga. App. 427, 428 (7) (170 SE2d 729).

The verdict on the general grounds and the specific grounds included therein is affirmed as being supported by the evidence and the law.

7. Defendants contend the court erred in denying them their request to make an unsworn statement during the presentencing hearing phase. In doing so, the trial judge said: "You made an unsworn statement in phase number one, but the law states that

all evidence placed before the jury must be subject to the rules of evidence." (T. 82). It is observed that he thus referred to that portion of the statute codified as § 27-2534 creating our present bifurcated procedure which reads, "In such hearing, subject to the laws of evidence."

When the bifurcated procedure was legislated into Georgia practice in 1970, the General Assembly expressly provided for a single trial divided into two parts. This is the clear meaning of the language that "the court shall resume the trial. . ." It should be noted that in construing this statute our appellate courts have further ruled that if error occurs only in the portion designated as "a pre-sentence hearing," that it is not necessary to have a new trial on the initial portion wherein the accused was found guilty. *Lingo v. State,* 226 Ga. 496 (1) (175 SE2d 657); *Johnson v. State,* 126 Ga. App. 757, 760 (191 SE2d 614). Such ruling recognizes remanding constitutes resumption of the original trial albeit with another jury or judge.

Significantly, the portion of the statute dealing with the pre-sentence hearing required it to be "subject to the laws of evidence." As our law-makers knew that all court proceedings are in compliance with the laws of evidence their use of this phrase was obviously with the intention that defendants be sworn instead of using the vehicle then available[1]to the accused of making an unsworn statement[2]without being subject to cross examination. This is clearly deduced from general knowledge that our courts had held that the unsworn statement was not considered evidence in the technical sense of that word. *Dixon v. State,* 12 Ga. App. 17, 18 (4) (76 SE 794); *Roberson v. State,* 12 Ga. App. 102 (2) (76 SE 752); *Bragg v. State,* 15 Ga. App. 623 (4)

---

[1] The unsworn statement which had been established Georgia practice since 1868 was abolished by enactment appearing in Ga. L. 1973, p. 292 et seq.

[2] See Ferguson v. Georgia, 365 U. S. 570 (81 SC 756, 5 LE2d 783), for an interesting recital of the history of this procedure in which the opinion noted Georgia to have been at that date (1960) the only jurisdiction in the common-law world to have retained the ancient rule that an accused was incompetent to testify under oath in his own behalf at his trial.

(84 SE 82). Our legislators undoubtedly were also familiar with the many decisions holding that the defendant's statement is not governed by rules controlling admissibility of evidence. *Prater v. State,* 160 Ga. 138 (127 SE 296); *Fite v. State,* 16 Ga. App. 16, 22 (1) (84 SE 485); *Bradford v. State,* 67 Ga. App. 462 (21 SE2d 108); *Wilson v. State,* 76 Ga. App. 257 (45 SE2d 709). Accordingly, the trial judge was correct in denying the defendants the right to make an unsworn statement and in his reliance on the phrase "subject to the laws of evidence."

Additionally, we are of the opinion that if the trial judge erred in this ruling, it must be treated as harmless error because the defendants did in fact testify in their own behalf, albeit under oath.

8. As the other enumerations of error (3 and 4) have not been argued they are treated as abandoned. See *Edge v. State,* 117 Ga. App. 628 (161 SE2d 420); *Harrell v. Bedgood,* 121 Ga. App. 16 (2) (172 SE2d 485); *Sheffield v. State,* 124 Ga. App. 295 (7) (183 SE2d 525).

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED NOVEMBER 7, 1973 — DECIDED FEBRUARY 12, 1974.

*A. L. Stanfield, James O. Goggins,* for appellants.
*William H. Ison, District Attorney, J. W. Bradley,* for appellee.