### 54909. WILSON v. THE STATE.

QUILLIAN, Presiding Judge.

On the evening of September 24-25, 1976, Mr. Billy Ray Bice, was the only employee present in the Seven-Eleven store on Old Concord Road, Smyrna, Georgia. He testified that the defendant came into the store at approximately 12:30 p.m. and bought one beer and left. Defendant returned at 2:30 a.m. and went to the beer cooler. Mr. Bice told him state law forbid him selling beer after 2 a.m. The defendant left. He returned at 3:30 a.m., and picked up an 8-pack of beer. Mr. Bice again told him he could not sell him the beer. Approximately five minutes later, the defendant returned, walked behind the register and placed a knife to the side of Mr. Bice and took approximately $122 from the register.

On October 24, 1976, around 3 a.m., the defendant and three other persons were in the parking lot of the same store. They were stopped by a police officer and Mr. Bice came out of the store and identified the defendant as

the person who robbed him on September 25.

Mr. Bice was given a photographic lineup test. There were seven photos, including two pictures of the defendant, and Mr. Bice identified both of them.

Another state witness was present at the time the robber first came into the store and he also returned after the robbery had occurred. His description of the robber differed from that of Mr. Bice and he could not identify the defendant as the robber. The officer who took the description of the robber from Mr. Bice also differed with Mr. Bice's testimony given at the trial as to the description given him immediately after the robbery. Although Mr. Bice thought the robber was around five feet, eight inches tall, and the other witness thought he was only five feet, six inches tall, the defendant testified that he was "six foot, maybe six-one." There were other minor discrepancies between Mr. Bice's testimony and those of the other state's witnesses.

The defendant testified that he was playing pool on the evening of the robbery with Richard Hendricks, but he left with Hendricks shortly before closing time — 2 a.m., and went home. Hendricks testified that he and the defendant "hung around for about an hour and a half" after "the pool table closed" at 12:00 and then he took the defendant home. The defendant's mother testified he arrived home "about fifteen until 2:00" a.m. and then went to bed.

After the jury commenced their deliberations they reopened and requested the testimony of Mr. Bice and the other state's witness who was in the Seven-Eleven store that evening be read. The court complied and the jury then returned a verdict of guilty. Defendant appeals his conviction. *Held:*

1. Defendant contends the verdict and the judgment are contrary to the evidence, without evidence to support it, and "decidedly and strongly against the weight of the evidence."

"Appellate courts will pass not on the weight, but on the sufficiency of the evidence to sustain a verdict. *Strong v. State,* 232 Ga. 294 (206 SE2d 461) (1974). If there is any evidence to support the findings of the jury, and no errors of law, the verdict should not be disturbed. *Proctor v.*

*State,* 235 Ga. 720 (221 SE2d 556) (1975)." *Gaines v. State,* 239 Ga. 98, 100 (236 SE2d 55). While there is evidence in the record which contradicts, in part, the state's principal witness, and evidence of alibi, "since the jury in criminal cases is the arbiter of all conflicts, and having resolved such issues against the defendant, and there being evidence to support the verdict, the court did not err in rendering final judgment on the verdict." *Walker v. State,* 130 Ga. App. 860, 865 (205 SE2d 49). On appeal, in passing on the sufficiency of the evidence, we are to afford evidence that view which is most favorable to the appellee, "for every presumption and every inference is in favor of the verdict." *Peluso v. State,* 139 Ga. App. 433, 434 (228 SE2d 395). The general grounds are without merit.

2. The court did not err in permitting the investigating officer to remain in the courtroom and testify after other state's witnesses. The trial judge specifically recognized and exercised his "discretion" in this matter in permitting the investigator to remain and assist the prosecutor. There was no error. *McNeal v. State,* 228 Ga. 633, 636 (187 SE2d 271); *Jarrell v. State,* 234 Ga. 410, 421 (216 SE2d 258).

3. Only one person identified the defendant as the perpetrator of this offense. However, the trial court charged the jury that ". . . *a* witness has made the contention that *they* saw and recognized the defendant as a participant . . ." (Emphasis supplied.) Defendant alleges this to be error as it was "misleading and confusing." This court has held "[f]or a slip of the tongue to be harmless error, the true meaning must be so palpable as to be clearly understood by the jury." *Eastern Dehydrating Co. v. Brown,* 112 Ga. App. 349, 350 (145 SE2d 274). If the slip is inadvertent and not prejudicial it will not require a new trial. *Childers v. State,* 130 Ga. App. 555 (5) (203 SE2d 874). In *Baker v. State,* 137 Ga. App. 33 (4) (222 SE2d 865) where the judge inadvertently stated "One" rather than "Two," this court found no error, and we find none here. The court stated that "a" witness said "they" saw the defendant at the scene. This in itself shows the context in which it was used was apparent and clearly palpable to the jury. Further, the jury heard the evidence. They were aware that only one witness testified that he recognized

the defendant. We find no prejudice to the defendant arising from incorrect usage of a pronoun which should have been obvious to the jury.

4. After the jury retired to deliberate, they were called back for the evening meal. The court asked: "without saying how you are divided, numerically how do you stand? I mean, which way, but just tell me how you are divided?" The foreman replied: "More for guilty than not." After further deliberation that evening the court asked if there had been any substantial change "in the last hour or so?" When informed that there had been, the court asked: "How do you stand numerically?" The foreman stated, "Nine to three." The court excused the jurors for the night and directed they be taken to a motel. The foreman of the jury was a paraplegic and he said "his physical condition require[d] personal attention, as a paraplegic and cannot be given except in his home." The judge announced in open court that he, "[i]n the presence of the Defendant . . . asked his counsel and the Defendant and each of them agree to excuse [the foreman] . . . and proceed with the verdict of eleven jurors." The state also agreed to excusal of the juror.

Defendant alleges the trial court erred "in dismissing the foreman of the jury from further deliberation . . . without making a determination that the defendant had knowingly agreed to the same. . ." Further, the court is alleged to have erred by inquiring "as to the standing of the jury" and after "having been informed by the jury that it was divided eight to three in favor of a guilty verdict" charging the jury regarding the "desirability of reaching a verdict."

(a) Attorneys have authority to bind their clients by any agreement in relation to that cause which has been "made in writing. . ." Code Ann. § 9-605 (Ga. L. 1957, p. 495). However, "[t]here is no law or rule which requires agreements between counsel, when made in open court, to be in writing." *Langston v. Maryland Cas. Co.,* 43 Ga. App. 854 (1) (160 SE 823). Here, the statement was made in open court before the defendant and his counsel that "each of them agree" to excusing the juror. The defendant would be estopped to assert this ground as error when the consent agreement was announced by the judge in his

presence, absent evidence of "fraud, collusion, accident, mistake or violation of express direction." See *Wilson v. N. E. Isaacson of Ga., Inc.,* 139 Ga. App. 582, 583 (229 SE2d 29). There is no allegation of, and there definitely is no evidence of, any such exception.

(b) The question posed by the judge to the jury was: "Without saying how you are divided, numerically how do you stand? I mean, which way, but just tell me how you are divided?" The answer was: "More for guilty than not." The judge attempted to ascertain the numerical division of the jurors without them divulging whether they were for guilt or innocence. The question, as stated, was confusing and it drew a response the foreman should not have revealed. Was this prejudicial error to the defendant? We find it was not.

In *Ball v. State,* 9 Ga. App. 162, 163 (70 SE 888), this court stated: "We think that it is a dangerous practice, and one of very doubtful propriety from a legal standpoint, for the judge to ask the jury in a criminal case how it stands; and, where the evidence of guilt is weak, the practice becomes pernicious; it is presumptively hurtful when, on information that the jurors stand eleven to one, the trial judge even remotely suggests to the one juror that he ought to surrender his conviction to that of the majority. A juror is usually so responsive to any suggestion made by the judge as to his duty. . .that the judge should be careful not to say anything that could possibly be construed by any member of the jury as indicating that it would be proper for him to yield his personal views of the evidence and shift his individual responsibility to the majority."

However, in *Flahive v. State,* 10 Ga. App. 401 (2) (73 SE 536), we held that it was not error for the trial judge to inquire of the jury how they stood if he does not intimate or express an opinion on the facts or attempt to induce the jury to make a verdict. Our law developed to a more precise level in *Frazier v. State,* 93 Ga. App. 204 (1) (91 SE2d 85), where we found that a "trial court may, after the jury has had a case under consideration for some time, inquire how they stand numerically." This was the question posed in this case that elicited the improper reply.

In *Huffaker v. State,* 119 Ga. App. 742 (2) (168 SE2d 895), we again agreed with *Flahive* and held the inquiry "is presumptively harmless" as to ascertaining the numerical division but "[w]here the court *seeks and obtains information as to* the numerical division between *guilty and innocent* it has been held reversible error." (Emphasis supplied.) Here the court did not *seek* information as to guilt or innocence. *Huffaker* further held: "If the court simply seeks to know the numerical division... and the statement as to the number voting guilty or innocent is volunteered by a juror, it has been held that, absent other factors suggestive of a prejudicial result, reversal is not mandatory." 119 Ga. App. 743. We find that factual situation in the instant case. The numerical count was solicited and not how the jurors voted. Although, the question may have been confusing to the jury, it is clear to us that the judge attempted only to obtain the numerical count. The remainder was volunteered. However, to avoid future misunderstanding, it is suggested that a court should state the question affirmatively, negatively, and illustratively, e.g.: "Tell me how you stand numerically — that is, whether you are 6 and 6, 8 to 4, etc., but do not tell me whether that number is for guilt or innocence. Do you understand my question?" We find no prejudice to the defendant as to this part of this enumeration.

(c) After the jury had been sequestered for the remainder of the day after the trial, quartered for the night, and deliberated for another period of time the following day, the court then requested how the jury stood — numerically, and found they were still at "8 to 3." He then gave the jury an instruction which has come to be known as the "Allen" or "dynamite" charge. See Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528). The charge given is almost identical to that approved by our Supreme Court in *Ratcliff v. Ratcliff,* 219 Ga. 545 (134 SE2d 605), and *Spaulding v. State,* 232 Ga. 411, 413 (4) (207 SE2d 43). A similar Allen charge was approved in *Ponder v. State,* 229 Ga. 720, 721 (194 SE2d 78), which ended with the exhortation: ". . . but I charge you emphatically and specifically that this is not to say that

you should surrender your conscientious convictions." The charge in this case, and those in *Ratcliff* and *Spaulding* did not include such cautionary language. This court in *Willingham v. State,* 134 Ga. App. 603 (5) (215 SE2d 521), approved an Allen charge couched more in the language of *Ponder* than *Ratcliff* and *Spaulding*. However, the court added: "The 'Allen charge' is not coercive of the minority *so long as it contains cautionary words* such as here used: 'no juror is required to surrender his or her honest opinion because of the honest different opinion of another juror or other jurors or for the purpose of reaching an unanimous verdict.' " (Emphasis supplied.) Thereafter, in *Greeson v. State,* 138 Ga. App. 572, 574 (3) (226 SE2d 769), this court reviewed an Allen charge in which the cautionary language was not included and held: ". . . the trial court erred in failing to include the proper cautionary words in giving such a charge..." *Greeson* was reversed on certiorari in *State v. Greeson,* 237 Ga. 193 (227 SE2d 324). Accordingly, that part of *Willingham* relating to the required use of cautionary language in the Allen charge is not controlling. As the charge in the instant case is almost identical to that approved in *Ratcliff* and *Spaulding,* this enumeration is without merit. *Little v. State,* 238 Ga. 122, 123 (231 SE2d 750).

5. The defendant alleges the trial court erred in failing to take corrective action after sustaining his objection to the prosecutor's remark during the trial that the defendant "had never relayed the fact that he supposedly had an alibi except on the witness stand at trial, thereby commenting on the appellant's constitutional right against self-incrimination."

The defendant testified on direct examination that on the night of the robbery he was shooting pool with a friend. On cross examination he was asked: "Q. And you haven't relayed this fact that you do supposedly have an alibi, you haven't relayed that to anybody apart from what you said on the stand? A. I relayed it to my lawyer." The objection then interposed at trial was to the "question as being improper. Once he is represented by counsel he does not have to relay anything to anybody but his attorney." The objection was sustained. No further action

was requested or taken.

After his arrest, the defendant had been questioned by Detective Drake. A "Jackson-Denno" hearing was held and the judge admitted the defendant's pre-trial statement in evidence. Before the question here objected to, the defendant had been asked and permitted to answer a similar question without objection. He was asked: "Q. You never did tell Detective Drake what you told the jury today about where you were, did you? A. I haven't talked to Detective Drake since I was arrested. Q. When you talked to him and [he] got this statement that you made you said you were probably in the beer joint, the first thing what you said? A. Or home."

This enumeration is without merit for a number of reasons. First: Where the same evidence is earlier elicited from the witness — unobjected to, no reversible error appears. *Tripcony v. Pickett,* 132 Ga. App. 563 (1) (208 SE2d 574). The reason being that this appellate court is a court for correction of errors. Absent objection in the trial court no ruling would be before us for review. *Staton v. State,* 135 Ga. App. 55 (1) (217 SE2d 384). Thus, if the evidence objected to is the same as that not objected to earlier in the trial, there is no basis for an appeal as in the first instance there was no objection, and the same information was properly before the trial court for its consideration.

Secondly, the objection is too general to present a question requiring a ruling by an appellate court. See *Isley v. Little,* 219 Ga. 23 (7) (131 SE2d 623). The objection in the trial court was that the question was "improper." On appeal the objection is that the prosecutor was "commenting on the appellant's constitutional right against self-incrimination." If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. No ruling was ever obtained upon the constitutional issue raised in this court and this court will not consider it. See *Hogan v. Hogan,* 196 Ga. 822 (1) (28 SE2d 74); *Greyhound Corp. v. Clough,* 211 Ga. 574 (2) (87 SE2d 387); *Wilson v. State,* 212 Ga. 157 (4) (91 SE2d 16); *Hicks v. State,* 216 Ga. 574, 576 (118 SE2d 364); *Newman v. State,* 239 Ga. 329, 330 (236 SE2d 673); *Hudson v. Miller,* 142 Ga. App. 331 (1) (235 SE2d 773). If a

party urges a general objection, such as that stated here ("improper"), he must specifically show at trial wherein the question is "improper," and that specific ground is preserved for appeal. See *McGahee v. State,* 133 Ga. App. 964, 967 (213 SE2d 91). If this procedure is followed, each party has an opportunity to present his side as to the specific ground urged as error and the trial court, and appellate court — if appropriate, will rule on that specific ground. The different nomenclature used by defendant's counsel in the trial court and the appellate court may or may not refer to the same error, and unless each of us is relying on and ruling on the same objection, the rights of the opposing party are not preserved. See *Ridley v. State,* 141 Ga. App. 854, 855 (234 SE2d 688).

"The . . . rule is that the scope of review is limited to the scope of the ruling in the trial court *as shown by the trial record* and cannot be enlarged or transformed through a process of switching, shifting, and 'mending your hold.' " *Redwing Carriers, Inc. v. Knight,* 143 Ga. App. 668, 674 (239 SE2d 686); accord, *Sanders v. State,* 134 Ga. App. 825, 826 (1) (216 SE2d 371); *Sumners v. State,* 137 Ga. App. 493, 494 (224 SE2d 126).

A third reason exists for lack of prejudicial error. The defendant contends the "prosecuting attorney's remark . . . that appellant had never relayed the fact that he supposedly had an alibi except on the witness stand at trial" amounted to "commenting on the appellant's constitutional right to remain silent and his constitutional right against self-incrimination. . ." This was not a comment on the defendant's silence. He was not silent at the time of his arrest and spoke to the investigating detective after being advised of his rights. Neither was the defendant silent at trial. What the prosecution was attempting to do was to show impeaching evidence given by the defendant to Detective Drake as to his location on the night of the robbery as contrasted to his testimony at trial on his location the night of the robbery. In Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) the U. S. Supreme Court stated that an accused's "post-Miranda" silence could not constitutionally be used for purposes of impeachment. Accord, *Hall v. State,* 138 Ga. App. 20 (3) (225 SE2d 705); *Howard v. State,* 237 Ga.

471 (228 SE2d 860). However, another issue altogether is presented when the defendant gives one version of his location for the time of the offense to the police and then gives the jury a different version. In that instance the earlier *statement* of the defendant is admissible for purpose of impeachment of his sworn testimony at trial. *Overcash v. State,* 239 Ga. 499 (1) (238 SE2d 50); see also *Carter v. State,* 142 Ga. App. 351 (1) (235 SE2d 750).

Last, but in no way to be considered the least viable reason, "[a] sustained objection to an improper remark made by counsel, without a motion for mistrial, will not constitute grounds for a reversal." *Lenear v. State,* 239 Ga. 617, 621 (238 SE2d 407). If counsel is dissatisfied with whatever action the trial court takes it is incumbent upon him to request further instructions or a mistrial. *Martin v. State,* 132 Ga. App. 658, 660 (209 SE2d 103); *Pitts v. State,* 141 Ga. App. 845 (3) (234 SE2d 682). None were requested. This enumeration is without merit.

6. We have examined the remaining enumerations and find no prejudicial error.

*Judgment affirmed. Shulman and Banke, JJ., concur.*

ARGUED NOVEMBER 9, 1977 — DECIDED FEBRUARY 14, 1978 — REHEARING DENIED MARCH 16, 1978 — CERT. APPLIED FOR.

*Cochran, Camp & Snipes, Gregory A. Griffin,* for appellant.

*Thomas J. Charron, District Attorney, Adele P. Grubbs, Assistant District Attorney,* for appellee.

ON MOTION FOR REHEARING.

Defendant contends that our decision on the enumeration alleging it was fatal error to inquire of the jury how they were divided numerically is controlled by Brasfield v. United States, 272 U. S. 448 (47 SC 135, 71 LE 345). We do not agree. Although Brasfield holds that "[a]n inquiry, put by the trial judge to a jury unable to agree, asking the extent of its division numerically, is *per se* ground for reversal," we find Brasfield "was not grounded in a specific constitutional provision . . . but was

announced as a rule of procedure to be followed in federal courts." Sharplin v. State, 330 S2d 591, 596 (Miss. 1976); accord, Marsh v. Cupp, 392 FSupp. 1060, 1063 (DC Ore. 1975), affd. 536 F2d 1287 (9th Cir. 1976), (U. S. cert. den.).

A thorough compendium on this issue is contained in 77 ALR3d 769. Jurisdictions following the rule that inquiry, by itself, is reversible error, include only federal courts, Michigan, New Mexico, Pennsylvania and Delaware. The courts in Michigan and Delaware also have conflicting decisions on this point. 77 ALR3d 784. We adhere to our original decision. See *Watkins v. State,* 237 Ga. 678, 679 (229 SE2d 465).

*Motion for rehearing denied.*