## 71219. JACKSON v. THE STATE.
(341 SE2d 324)

BEASLEY, Judge.

Appellant claims as sole error that the trial court transgressed OCGA § 17-8-57 by intimating its opinion as to the guilt of the accused when the jury returned a premature verdict due to its misunderstanding of "unanimous," and that a mistrial should have been granted because of the court's transgression.

Appellant Jackson was arrested as he attempted to leave the apartment of an elderly woman whose next-door neighbor, after hearing a man's voice speaking in threatening tones in the victim's apartment, called police. Jackson was tried on charges of burglary, rape, and aggravated assault. After less than an hour's deliberation the jury announced that it had reached a verdict. The clerk read aloud the verdicts of "guilty" on all three counts, but then turned to the court and stated, "They don't have the verdicts right, Judge." The court examined the paper and asked the foreman if the verdicts on all counts had been unanimous. Upon receiving an affirmative reply, the court instructed the clerk to "white out" some figures written to the side of the verdicts, believing them unrelated to the verdict. The court then, for the second time, asked the foreman if the verdicts were unanimous and again received an affirmative response. When defense counsel received the court's permission to poll the jury, however, it was revealed that the verdicts represented a majority vote rather than a unanimous decision, and that the foreman was confused as to the meaning of the word "unanimous" and thought it meant "majority." The court then reiterated that a unanimous verdict was necessary and ordered the jurors to resume deliberations.

Defense counsel moved for a mistrial on the ground of the erroneously reported verdicts and the court's allegedly prejudicial re-

marks relative thereto, which motion was denied.

The court had initially charged: "Let me suggest to you that when you get to your jury room that you first elect one of your number as Foreperson; it will be the responsibility of that person to lead a discussion of the evidence in the case, to afford each and every member of the jury an opportunity to express his or her opinion as to what the evidence does or does not show, and then after everyone has had that opportunity, make up a unanimous verdict which you think speaks the truth." Appellant's counsel stated that he had no exceptions to the charge.

When the prematurity of the announcement was discovered, and the court corrected the misunderstanding of the jurors (the court having first corrected its and the clerk's own initial understanding that the figures on the side of the verdict were notations of *interim* voting), the court carefully instructed the jury: "if it's not a unanimous verdict, then you will have to come back in the morning and resume your deliberations and see if you can make unanimous verdicts. Mr. King [appellant's counsel]: Your Honor, are they instructed to return a unanimous verdict or not at all? The Court: Yes, sir . . ." Then it repeated to the jury: "but as I have heretofore instructed you, it must be unanimous if you make a verdict and if you can't make a verdict, then that's a different story. MR. KING: Well, I didn't want any of the jurors who happen to think different with the majority to get the impression that the Court is ordering a unanimous verdict and is, therefore, causing someone to feel that they should change their mind for any reason other than what would be appropriate and, therefore, if they do not and that they are firm in their belief that perhaps the Defendant is not guilty, that they should feel pressured to change their vote simply because the law says that to find a person guilty that there must be a unanimous verdict, that is what we are referring to. THE COURT: Well, I had no intentions of pressuring anyone, but I want a legal verdict, if a verdict is made. Now, they don't have to make a verdict and is there anyone who doesn't understand that? (No response.)" The court then excused the jury for the evening, and the next morning simply instructed it to "please go back to your jury room and continue your deliberations in an effort to make up a verdict which you think speaks the truth."

After deliberating together for a period in excess of an hour, the jury reported a unanimous verdict on all counts. Each juror was polled by appellant's counsel, and each juror gave his name and affirmed that he had heard the verdict read, that it was his verdict, and that it was still his verdict.

Thus the final verdict of the jury in this case was guilty as to each charge. This the jury was authorized to conclude; the evidence was overwhelming as appellant was virtually caught in the acts. There

is no suggestion whatsoever that what occurred due to the original misconception prejudiced the subsequent deliberations and infected the verdict. When it was revealed that the jury had not completed its work, the court patiently corrected the jury's error, removed any idea that the court had an opinion or desired a conviction, let the confusion subside by sending the jury home for the night, and gave no coercive instructions which would encourage a verdict one way or another or within any particular time period. The jury simply resumed deliberations and fulfilled its obligation according to its oath and the court's instructions, reported its conclusions, individually and without hesitation confirmed the same, and was excused.

The fact that the actual vote was announced as the court tried to ascertain whether unanimity had been reached does not add weight so as to make it coercive. While it could have been done a different way, stating the vote so it could be discerned whether in fact unanimity had been reached did not introduce a poisonous pall over the jury's independence or impartiality in their further deliberations. Moreover, the voting score (which was given on only two of the three charges) was volunteered by the foreman and went further than the questions asked. Appellant's counsel started the poll of the jury by questioning the foreman: "MR. KING: Mr. Johnson, you heard the reading of the verdict? MR. JOHNSON: Yes, sir. MR. KING: Was that your verdict? MR. JOHNSON: That was our verdict. MR. KING: Was it your decision? Was it your decision? MR. JOHNSON: Not all together. We had to take a vote and we all voted. MR. KING: Was the vote unanimous? MR. JOHNSON: Well, one was 11 to 1. MR. KING: Which count was 11 to 1? MR. JOHNSON: The burglary. MR. KING: I see. Then was a guilty verdict announced 11 to 1 as a result of the majority control? MR. JOHNSON: Yes, sir." Then counsel asked for a mistrial because of the lack of a unanimous verdict. The court replied: "Well, I just asked him a few minutes ago did everyone vote in favor of guilty on the burglary. THE FOREMAN: No, not on the burglary; that was one of them. THE COURT: All right, what about on the rape? THE FOREMAN: The rape was 9 to 3. THE COURT: Well, it's not a unanimous verdict." Neither divulgence, then, was elicited by the court; as to the first, the court was not even the questioner. Reversal, therefore, is not mandatory. *Huffaker v. State*, 119 Ga. App. 742 (2) (168 SE2d 895) (1969); *Wilson v. State*, 145 Ga. App. 315, 319 (4) (b) (244 SE2d 355) (1978); *Davis v. State*, 169 Ga. App. 386 (2) (313 SE2d 109) (1984).

The judgment which conformed to that jury's verdicts is affirmed.

*Judgment affirmed. Banke, C. J., Carley, Sognier, Pope, and Benham, JJ., concur. Birdsong, P. J., concurs in the judgment only. Deen, P. J., and McMurray, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion.

The trial transcript reveals that the court had instructed the jury, prior to the beginning of its deliberations, that unanimous verdicts were required, and had reiterated these instructions before sending the jurors back for further deliberations subsequent to the challenged incident. The transcript further indicates that, taken as a whole, the court's remarks immediately subsequent to the reading of the purported verdicts were not such as to intimate any opinion regarding the defendant's guilt or innocence, as proscribed by OCGA § 17-8-57, or otherwise to influence the jury to find Jackson guilty. Moreover, in the fact situation of the instant case, we find it "highly probable that the error did not contribute to the judgment." *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

The "highly probable" test is inapplicable, however, when, as in the instant case, a constitutional error is involved. Id. In any event, it is the duty of the court and the prosecutor to ensure that the defendant receives a fair trial. *Dean v. State*, 247 Ga. 724 (279 SE2d 217) (1981). Under the peculiar facts of the instant case, we cannot say that the publication of a faulty verdict in open court, including the numbers of those voting "guilty" and "not guilty," could not have had a prejudicial effect upon the jurors' subsequent deliberations, thereby impinging upon appellant's Sixth Amendment right to trial by a fair and impartial jury. See Constitution of Georgia, Art. I, Sec. I, Par. XI; *Glass v. State*, 250 Ga. 736 (300 SE2d 812) (1983); *Peek v. Kemp*, 746 F2d 672 (11th Cir. 1984). Although the United States Supreme Court has held that in certain circumstances a litigant in the state courts may waive his right to a unanimous verdict, we find no case in which it has been held that a less than unanimous verdict may be forced upon a party without his consent. See *Johnson v. Louisiana*, 406 U. S. 356 (92 SC 1620, 32 LE2d 152) (1972); *Apodaca v. Oregon*, 406 U. S. 404 (92 SC 1628, 32 LE2d 184) (1972); *Phillips v. Meadow Garden Hosp.*, 139 Ga. App. 541 (228 SE2d 714) (1976). See also Comment, 16 Ga. Bar J. 234 (1983); Comment, 7 Ga. Law Rev. 339 (1973).

In the instant case, given the patent fact that at least one of the jurors had grossly misunderstood the meaning of the word "unanimous," the court should have been alerted to the potential for confusion on the part of unsophisticated laymen and, before sending the jurors back to the jury room, should have bent over backwards to explain to them in explicit, non-technical terms, that *whatever* the verdict might finally be, it must be the verdict of each of the twelve individual jurors; and, moreover, that the dissenting jurors were under no compulsion to change their verdicts merely because they might feel themselves pressured by the majority. The facts of *Dyson v. State*, 155 Ga. App. 297 (270 SE2d 711) (1980), are distinguishable from

those in the instant case; the state's citation of *Dyson* therefore does not support the proposition for which it is made.

In *Hibdon v. United States*, 204 F2d 834 (6th Cir. 1953), the court held, at 838, that the requirement of a unanimous verdict is an "inescapable element of due process," and that to accept a less than unanimous verdict would be to negate the constitutional "beyond a reasonable doubt" requirement. "[T]he rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected." *People v. Gitlow*, 234 N. Y. 132, 158 (136 NE 317) (dissenting opinion); *Ware v. State*, 128 Ga. App. 407 (196 SE2d 896) (1973). Out of an abundance of caution, therefore, we would hold that the trial court erred in denying appellant's motion for new trial, and would remand this case for proceedings not inconsistent with such a holding.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

## DECIDED FEBRUARY 18, 1986.

*Chevene B. King, Jr.*, for appellant.
*Hobart M. Hind, District Attorney*, for appellee.