## 2821.　HUNT *v.* THE STATE.

1. The excerpts from the charge on which error is assigned, when considered in connection with the entire charge, do not contain any material or substantial error, and did not confuse or mislead the jury as to the essential elements constituting the crime with which the defendant was charged. On the contrary, the instructions fully, fairly, and with substantial accuracy, submitted to the jury all the issues in the case.
2. Individually we consider the evidence weak and unsatisfactory, but juridically we must consider it as sufficient. Reviewing courts should not enter the forum of facts and contest with the jury the standard of reasonable doubt. If so, jury trials would be a useless formality.
3. The alleged newly discovered evidence was simply cumulative and impeaching and was not likely to change the result on a second trial, and there was no error in refusing to grant another trial on this ground.

　　　　　　　　　DECIDED OCTOBER 14, 1910.

　Indictment for kidnapping; from Polk superior court—Judge Edwards. June 16, 1910.

　*G. R. Hutchens, Janes & Hunt, Bunn & Bunn,* for plaintiff in error. *W. K. Fielder, solicitor-general,* contra.

　HILL, C. J.　Hunt was indicted for a violation of § 110 of the Penal Code, which is as follows: "Any person who forcibly, maliciously or fraudulently leads, takes or carries away, or decoys or entices away, any child under the age of eighteen years from its parent or guardian, or against his will, or without his consent, is guilty of kidnapping." The motion for a new trial, based on the general grounds and on thirty-two special grounds, was overruled, and the defendant brought the case here for review. It is earnestly insisted by his counsel that the evidence did not make out his guilt beyond a reasonable doubt, in that the proof was not clear as to the age of the girl at the date of her abduction, and it also appeared affirmatively that her father had abandoned his parental control of his daughter before the time when she was alleged to have been taken away from home; and the evidence was not at all satisfactory as to the fact of her abduction. It is also insisted that she was a prostitute of such bad character that she could not be abducted.

　We will briefly notice the merits of the case made by the evidence. As to the age of the girl, both her father and mother testified positively and unequivocally that she was seventeen years old on the 8th day of January previous to the trial of the case, which took place on September 1, 1909. An aunt, who testified that she

was present at the birth of the girl, testified that she was seventeen years of age, and an uncle, the husband of this aunt, corroborated this statement. In the absence of any record made at the date of her birth, or of any record kept by the family of that date, this positive testimony of her parents was the best evidence of the fact that could have been produced; and the evidence of her aunt and uncle was also of considerable probative value. In addition to this evidence as to her age, the girl herself testified that she had been told by her mother that she was seventeen. To meet this positive character of evidence several witnesses were introduced who testified that the girl was from twenty to twenty-two years of age at the time of the trial, and was therefore over the age of eighteen years at the time it is alleged that she was taken away from her parents, giving facts and circumstances in support of their testimony of more or less weight. But in view of the testimony for the State it can not be reasonably contended that the age of the girl was shown to have been under eighteen years when the offense was committed. It was exclusively a question for the jury, and if they saw fit to accept the positive testimony of the parents of the girl as proof of this essential fact, certainly this court can not say that they found this fact without any evidence to support it.

As to the allegation that her father had abandoned his parental control, the evidence showed that she was taken away from her father's house by the defendant. It is true that she had for several months lived with her sister in the town of Cedartown, and that she and her sister were working in a factory at that place, paid their own expenses, and furnished the room in which they were living; and there is also evidence that she had made several visits away from her father's home to relatives; but these facts did not even tend to show that parental control had been abandoned. "Until majority the child remains under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power is lost—1. By voluntary contract, releasing the child to a third person. 2. By consenting to the adoption of the child by a third person. 3. By the failure of the father to provide necessaries for his child, or his abandonment of his family. 4. By his consent to the child receiving the proceeds of his own labor, which consent shall be revocable at any time. 5. By consent to the marriage of the child, who thus assumes inconsistent responsibilities.

6. By cruel treatment of the child." Civil Code, § 2502. It is contended that the facts that the daughter in this case had lived away from her parents for several months with her sister in Cedartown, and had during that time received the proceeds of her own labor, were sufficient to show that the father had lost his parental power or control over her. It is not contended that parental power was lost in any other way. Admitting it to be true that the daughter was allowed to have her own wages and did live with her sister away from home for several months, this by no means establishes the fact that the father had surrendered his power over her, or that her manumission was complete and final. Even if a parent should allow a child to engage in a particular employment and retain for himself the wages for his services rendered while so engaged, it would by no means follow that the minor had been manumitted by his father for the whole period of his minority. *Atlanta and West Point R. Co.* v. *Smith,* 94 *Ga.* 111 (20 S. E. 763). The temporary permission by the father that the daughter should keep her earnings in this case and apply them to her own use, and the fact that she lived away from home for several months while she was engaged in working in the factory, were not sufficient to show that he had lost his parental power over her, and any inference that such was the case was fully rebutted by the fact that she had returned to her home and was living with her father at the time of her abduction. Besides, her father testified positively that he had not surrendered his control of her.. The jury were therefore fully authorized to find that this essential ingredient of the offense was clearly shown by the evidence in behalf of the contention made by the State. It is insisted in the third place that the evidence failed to show that this girl was taken or carried away from her parents; that she was a girl of depraved and immoral character who led a life of utter degradation and abandonment and had left her father's home without any inducement except her own vicious inclination. It is true the evidence does show that the girl was a prostitute, but the law makes no discrimination in the character of a child under eighteen years of age who is taken or carried away from the control of its parent or guardian. The law is intended to protect the bad child as well as the good one, and its purpose is to protect the rights of the parents as well as to save the child from the machinations of a wicked man. Indeed, it

might very justly be contended that there was greater reason for its enforcement in the case of a vicious child than of a good one; for such a child would more greatly need the protection of his or her parent. But as stated, the law makes no discrimination. If the girl's statement was true (and the jury had the right to believe it notwithstanding the attempted impeachment of her by showing her bad character), she was induced to go with the defendant from her home by his statement to her that he had received a letter from the man who, she claimed, had seduced her and was the father of the child with which she was then pregnant, and who was a relative of the defendant, saying for her to meet him for the purpose of marriage. It is unnecessary to go into the revolting details of the occurrences which took place while the girl was in the custody and control of the defendant and before she had been rescued and brought back home by her father.

The learned counsel for the plaintiff in error earnestly contended that his guilt was not established beyond a reasonable doubt. The doctrine of reasonable doubt is one of fact, and not of law. Reviewing courts whose sole province is to correct errors of law should not enter the forum of facts and contest with the jury the standard of reasonable doubt. If so, jury trial becomes a useless formality. It is true the law fixes the standard of mental conviction as one that must be "sufficient to satisfy the mind and conscience beyond a reasonable doubt." It is logically impossible for a reviewing court, where there is any evidence to support the verdict, to say that this standard was not reached. Indeed, the legal presumption is that it was reached and the mind and conscience satisfied, else the verdict would not have been found. Individually we may consider the evidence of guilt weak and unsatisfactory, yet juridically we must consider the evidence sufficient; and therefore the verdict must stand, unless the judge, in the trial, committed some material error which prejudiced the rights of the defendant.

We have examined the special assignments of error very carefully, and we can not find an error of a substantial or prejudicial nature in any of them. The objections made to certain excerpts from the charge, when considered in connection with the entire charge, are without merit. On the contrary, the law applicable to all the issues made by the evidence relative to the constituents of

the crime charged against the defendant was fully, fairly, and accurately presented to the jury.

The exception that the judge did not instruct the jury anywhere in his charge as to the rules of law regarding impeaching evidence and the effect to be given thereto is not sufficient, even if erroneous, to justify a reversal, there being no request for such a charge. The only witness in this case whom it was attempted to impeach was the girl who, it is alleged, was inveigled and taken away from the control of her parent; and the impeachment simply went to prove her character as a prostitute. While the character of a woman for virtue, morality, and chastity goes to her credit, yet the fact of bad character is not sufficient to entirely discredit her evidence, and we think the weight that should be attached to it might be safely left to the intelligence of the jury who see her and hear her testify. But it has been frequently held by the Supreme Court and by this court that in the absence of a request to charge on the rules of law relating to the impeachment of witnesses, a failure so to charge would not be reversible error. *Strickland* v. *State,* 4 *Ga. App.* 445 (61 S. E. 841); *Roberson* v. *State,* 4 *Ga. App.* 833 (62 S. E. 539).

The remaining grounds in the motion for a new trial all relate to alleged newly discovered evidence. No new, material, or substantive fact is disclosed, but this alleged newly discovered evidence is purely impeaching and cumulative in character. It relates to the bad character of the girl who was abducted, and to her age at the time of the abduction. Both these questions were fully considered by the jury, and in our opinion this alleged newly discovered evidence, in all probability, would not have produced a different verdict, if it had been before the jury.

*Judgment affirmed.*

RUSSELL, J., dissenting. I can not concur in the judgment of affirmance, because in my opinion the newly discovered evidence would produce a different result. The record discloses a very weak and doubtful case; and while I have no desire to interfere with the finding of the jury upon the testimony adduced, I think the ground of the motion based upon newly discovered evidence is meritorious. It conforms with every requirement of law, and there should be another trial.