## 48522. SWIFT v. THE STATE.

EVANS, Judge.

A rock festival was held on Jekyll Island during

March, 1973. During two days of heavy traffic into the festival area a group of city and county law enforcement personnel conducted a roadblock so positioned on a four-lane highway that only traffic into Jekyll Island would be affected. The officials designated the roadblock as a check for drivers' licenses, inspection stickers, car registrations and runaways.

Some 1,500 cars passed through this roadblock, including the 1971 VW van owned and driven by Michael Swift, defendant. While Swift was stopped and his papers were checked, an officer walked around Swift's car and saw green vegetation on the floormat, which he identified as marijuana. Officers then searched the car and in the glove compartment found a bag of marijuana. Swift was arrested and charged with marijuana possession.

At the hearing on his motion to suppress the marijuana Swift denied that the officer had seen any vegetation on the floormat, and testified that two officers with no permission whatever opened his car door and searched the car after asking him to get out. Swift attacked the roadblock on grounds it was a mere ruse or subterfuge used to justify a general search of automobiles headed for the rock festival, and contended that there was no probable cause to search his car.

The motion to suppress was denied and defendant appeals. *Held:*

Should the motion of defendant to suppress evidence have been sustained? The answer to that question is resolved by deciding whether the roadblock at which he was stopped and searched was a subterfuge or was a bona fide roadblock for the purpose of checking drivers' licenses, inspection stickers on cars, etc. If it was a subterfuge, then the search was illegal and defendant's motion to suppress should have been sustained.

The trial judge held that the motion to suppress evidence be denied, and counsel for the state argues that if there is any evidence to authorize the court's finding, same should be upheld. In support it is argued that the following cases authorize such finding, to wit: *Williams v. State,* 119 Ga. App. 557 (167 SE2d 756); *Raines v. State,* 123 Ga. App. 794 (182 SE2d 491); and *Harris v. State,* 120

Ga. App. 359 (170 SE2d 743). None of the cited cases holds that *any* evidence is sufficient to authorize the trial judge to make a finding on motion to suppress, but rather there must be *sufficient* evidence; and of course, the burden of showing that probable cause for the search exists is on the state. *Veasey v. State,* 113 Ga. App. 187, 189 (147 SE2d 515).

The state also contends that evidence discovered by mere observation of things in plain view does not constitute a search. The fallacy in this argument is that defendant *would not have even stopped his vehicle but for the roadblock,* and if the roadblock was illegal, as being a subterfuge, whatever was discovered by search or otherwise while defendant was stopped would be inadmissible as evidence. It is not contended that any of the evidence could have been seen while the vehicle was in motion. Was the roadblock set up for the principal purpose of checking inspection stickers on automobiles, drivers' licenses, etc., or was its principal purpose the discovery and seizing of illegal drugs? Let us examine the facts.

The roadblock was set up between Brunswick and Jekyll Island to coincide with the time when a *rock festival* was being held at Jekyll. It is a matter of common knowledge that many of the young people who attend these festivals are suspected of carrying illegal drugs thereto.

Who went to the roadblock to inspect the stickers, drivers' licenses, etc.? 1. The Chief of Police. 2. The Glynn County Drug Abuse Squad, of from one to three members. 3. The Assistant District Attorney of the Brunswick Judicial Circuit. 4. An officer of the Naval Investigative Service. 5. Members of the City Police Department of Brunswick, one of whom brought his family with him. 6. The Glynn County Police Department, consisting of from 15 to 20 men, their duties including transporting prisoners away from the roadblock. 7. The Glynn County Auxiliary, which is under supervision of Glynn County Police Department. 8. A magistrate. 9. A marijuana dog, trained to smell marijuana. One witness testified the dog was present "for the drivers' license check." (Tr. 12)

What an imposing array of man and beast to conduct

a drivers' license and inspection sticker check!

In naming those who were present on this important occasion to check drivers' licenses, let us not overlook the only ones who customarily perform such duties. Everyone who drives a car knows that from time to time his license is checked. And who does the checking? Why, members of the State Highway Patrol, of course! And there were actually some representatives of the State Highway Patrol present a part of the time during this drivers' license check. But they seemed completely disinterested, as if this was not something with which they were concerned.

The transcript, at page 13, is as follows: "Q. Did you have anyone from the state patrol there? A. At times there were troopers at the roadblock; they made several traffic cases at the roadblock, yes. *They weren't there very much.*" (Emphasis supplied.)

The state contends that as some traffic cases were made, this proves the purpose of the roadblock was to make a traffic check. Not so! Of course, they made some cases for traffic violation. But they were precious few; not enough to tell how many. There were 65 arrests for illegal drugs! The troopers, who always perform these duties at a roadblock "weren't there very much." What would any intelligent person make of their absence and their being disinterested in the whole matter by being absent most of the time for two days? *Remember, these are the very officers of the law who customarily conduct roadblocks for drivers' license and inspection sticker inspections!*

Was it a subterfuge? Was the real purpose the apprehension of illegal drugs? Why was the *Chief of Police* present—his job is not that of conducting roadblocks for drivers' license inspection?

Why was the *Glynn County Drug Abuse Squad* present? Did they come out to see whether inspection stickers were on the cars or to apprehend illegal drugs, in accordance with the name of the squad under which they operate?

Why was the *Assistant District Attorney* present? Why was there a *magistrate* present? Were they there to inspect licenses and stickers? Why was there present an officer of the *Naval Investigative Service?*

Why did the *City Police Department of Brunswick* appear with *one member's family*? Was it to see the sensational transaction of finding a driver without a license, and seeing him arrested? Could this be a source of great entertainment?

Why did the *Glynn County Police Department, with 15 to 20 men* appear on the scene? One witness said it was so prisoners might be transported away from the scene. Was it expected that those hapless persons without an inspection sticker would be carted off to jail? Or, if a driver's license had expired would he be immediately incarcerated?

Why did the *Glynn County Auxiliary* feel it necessary to come to the roadblock? And how many men were there in all? Surely this was one of the greatest checks on drivers' licenses and inspection stickers in our state's history!

Now we come to the most damaging witness in this imposing array. Why did the *marijuana dog, trained to smell marijuana,* appear at the roadblock? He could smell all day long without ever smelling an expired driver's license; or the absence of an inspection sticker. He was no good at all for the *alleged principal purpose,* to wit: Checking of licenses and inspection stickers. But if they needed help on smelling out marijuana, he was the very article they needed most, and they had him there! What a ridiculous position the state assumes. They say, "We were not there to search for and discover and seize marijuana and illegal drugs; we were there to check licenses." *But they brought their marijuana dog with them and left their license dog—if there is such an animal—at home.*

If the police discover some stranger in a bank at midnight—with dynamite caps and other explosives—and he explains that he is a plumber and is looking over the bank to see what will be required when he works on its plumbing *but left his plumbing tools at home* —the police are very apt to disbelieve him and to think he has in mind the blowing open of the bank vault. That presents no stronger case than is here presented as to whether the roadblock in Glynn County, on March 24 and 25, 1973, was really for the purpose of checking on

drugs as against the completely unreasonable and ridiculous contention that it was a roadblock, bona fide and in good faith set up to check on drivers' licenses and inspection stickers.

What an unusual drivers' license check! A few cases—we do not know how many—were made for traffic violations, *but sixty-five arrests were made for illegal drugs.*

The evidence to the contrary is so overwhelming and so compelling that any finding to the effect that this was a bona fide roadblock for the purpose of checking drivers' licenses and inspection stickers should be promptly set aside. The search was illegal and the evidence sought to be suppressed in the motion should have been suppressed.

*Judgment reversed. Bell, C. J., Deen, Quillian and Clark, JJ., concur. Hall P. J., Eberhardt, P. J., Pannell and Stolz, JJ., dissent.*

ARGUED SEPTEMBER 14, 1973 — DECIDED FEBRUARY 8, 1974 — REHEARING DENIED MARCH 12, 1974 —

*J. S. Hutto & Associates, Randall M. Clark, G. Carroll Palmatary,* for appellant.

*Glenn Thomas, Jr., District Attorney, Cletus W. Bergen, II, Robert A. Barnaby, II,* for appellee.

HALL, Presiding Judge, dissenting.

The apparent philosophy behind the position taken by the majority opinion will constitute a severe limitation on law enforcement in Georgia. The actual decision restricts the use of the roadblock—a very valuable police tool in protecting the members of the public upon the highways of this state. But the underlying approach is even more far-reaching, and foreshadows the intention of this court to sit as a *trial* court when as many as five of our nine judges hold notions about law enforcement techniques which conflict with the lawful procedures of properly constituted law enforcement officers. This conclusion follows from the fact that the majority opinion, completely rejecting the authorized findings of the trial judge, has openly and avowedly passed upon the

credibility of witnesses appearing at trial, and, entirely usurping the fact-finding function, has held that the police *lied* in their testimony on the purposes of the roadblock. This new principle of appellate fact-finding is in conflict with a host of decisions from both appellate courts. For example, "By the express terms of the Constitution of Georgia, the Supreme Court [and Court of Appeals] is a court for the correction of errors of law only. Art. 6, sec. 2, par. 5 (Code § 2-3005)[now Code Ann. § 2-3704]. We can not undertake to correct errors of fact. We are prohibited from so doing, and can only decide law questions. But no such limitation is placed on the judges of the superior court. . . Ours is the function merely to see that the law is followed. Theirs is the solemn responsibility to see to it that justice is administered according to the evidence as well as the law." *Mills v. State,* 188 Ga. 616, 623 (4 SE2d 453).

The credibility of a witness is for the jury or the trial judge sitting without a jury. Code § 38-1805; *Gwin v. Morgan,* 225 Ga. 192 (1) (167 SE2d 393). The "credibility of the witnesses is for his [trial judge] determination." *Simmons v. State,* 111 Ga. App. 553, 554 (142 SE2d 308). The trial judge has this right "to credit that evidence which commended itself to his judgment" and his judgment "is not subject to review by this court." *Goggans v. State,* 14 Ga. App. 822 (82 SE 357). His judgment "should not be disturbed by a reviewing court if there is any evidence to support it." *Munn v. Kelliam,* 228 Ga. 395, 398 (185 SE2d 763); *Lester Colodny Const. Co. v. Allen,* 129 Ga. App. 545 (199 SE2d 917). "Reviewing courts whose sole province is to correct errors of law should not enter the forum of facts. . ." *Hunt v. State,* 8 Ga. App. 374, 377 (69 SE 42).

1. The facts. — A rock festival was held on Jekyll Island during March, 1973, and during two days of heavy traffic into the festival area a conglomerate group of city and county law enforcement personnel conducted a roadblock so positioned on a four-lane highway that only traffic into Jekyll Island would be affected. The officials designated the roadblock as a check for drivers' licenses, inspection stickers, car registrations and runaways.

Some 1,500 cars passed through this roadblock,

including the 1971 VW van owned and driven by Michael Swift, appellant here. An officer later testified that while Swift was stopped and his papers were checked, he [the officer] had walked around Swift's car, had seen green vegetation on the floormat, and identified it as marijuana. Officers then searched the car and in the glove compartment found a bag of marijuana. Swift was arrested and charged with marijuana possession.

At the hearing on his subsequent motion to suppress the marijuana Swift denied that the officer had seen any vegetation on the floormat, and said that entirely without permission two officers had opened his car and searched it after asking him to pull over and get out. Swift attacked the roadblock on grounds it was a mere ruse or subterfuge used to justify a general search of automobiles headed for the rock festival, and that there was no probable cause to search his car.

His motion to suppress was denied, and he appealed with a certificate.

2. The roadblock.—It has been uniformly held that a roadblock to check drivers' licenses, inspection stickers, car registrations and driver intoxication does not amount to arrest or search and seizure when not done as a subterfuge. 7 AmJur2d 668, Automobiles, § 98 (1963). Cf. *Anderson v. State,* 123 Ga. App. 57 (179 SE2d 286). See generally, Reich, Police Questioning of Law Abiding Citizens, 75 Yale L. J. 1161, 1167. "The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the inspection may produce the irrefutable proof that the law has just been violated. The purpose of the check is to determine the present, not the past: *is* the car, *is* the driver now fit for further driving? In the accommodation of society's needs to the basic right of citizens to be free from disruption of unrestricted travel by police officers stopping cars in the hopes of uncovering the evidence of nontraffic crimes, . . . the stopping for road checks is reasonable and therefore acceptable. Likewise, an arrest is proper if the check reveals a current violation which by its nature must have been taking place in the

immediate past. State and Federal Courts, including this one, have uniformly sustained such checks and arrests when not done as a subterfuge or ruse." Myricks v. United States, 370 F2d 901, 904 (5th Cir.).

It should be noted that one of the gravest problems before the public is the carnage upon the public highways of our state. In facing up to this responsibility, the judicial branch of government should not impair any reasonable means that are taken by the legislative and executive .branches of government to insure that motor vehicles are properly licensed and inspected and that drivers are properly licensed and are not operating under the influence of alcohol or drugs. The remedy against extra-legal police activity is to satisfy the reasonable demands of the police and the prosecutors for the interrogation of suspected persons.

Swift contends that a finding is demanded that the roadblock was a subterfuge used to conduct general searches because (1) the roster of personnel manning the roadblock including the City Police and the Chief of Police, the Glynn County Drug Abuse Squad, and Assistant District Attorney, an officer of the Naval Intelligence Service, the County Police, and a dog trained to sniff marijuana; and (2) that the officer who stopped him was a member of the Glynn County Drug Abuse Squad. However, when all the facts are viewed in their totality, it cannot be said that they did not authorize the trial court to find that a legal roadblock was in existence.

The record shows that during the two days in which the roadblock existed approximately 1,500 cars passed through the roadblock, traffic violations were charged against various drivers, but only 40 to 50 of these cars were subjected to interior searches, resulting in some 65 drug arrests. This fact alone rebuts the contention that the roadblock was for the purpose of making a general exploratory search for drugs. There is testimony that the officers at the roadblock were checking cars for violations, inspection stickers and for named runaways the officers had on a list compiled from calls by parents who believed their children might be going to the rock festival. While this defendant was stopped at the roadblock by an officer of the Glynn County Drug Abuse

Squad, there is testimony that the officer asked to see his driver's license, the officer examined the license, checked the window for the inspection sticker and walked around the car. The officer testified that during the visual check of the car from outside the vehicle he saw traces of green vegetation on the floor of the car that appeared to him to be marijuana. He testified to facts ample to show his ability and experience in differentiating marijuana from other substances. He then searched the car and found a bag of marijuana in the glove compartment. The dog trained to detect marijuana was present at the roadblock but was not used in reference to this defendant. An officer testified that as some cars approached the roadblock occupants threw marijuana out of the windows, and the dog was used to locate it beside the road.

"Where there is a conflict in the evidence on the motion to suppress, the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order." *Brisendine v. State,* 130 Ga. App. 249 (203 SE2d 308); *Williams v. State,* 119 Ga. App. 557 (167 SE2d 756); 22A CJS 645, Criminal Law, § 657(34) (1961). See *Raines v. State,* 123 Ga. App. 794 (182 SE2d 491); *Harris v. State,* 120 Ga. App. 359 (170 SE2d 743).

In my opinion there was evidence authorizing the trial court to find that the roadblock was not a subterfuge to conduct general searches.

3. Plain view.—Under the "plain view" doctrine, evidence discovered by mere observation of things in plain view of the officer does not constitute a search. Ker v. California, 374 U. S. 23, 42 (84 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234, 235 (88 SC 992, 19 LE2d 1067). These decisions point out that in order for the doctrine to apply, the observer must have the right to be in the position to have that view and the seizure without a warrant must be based upon "exigent circumstances" justifying the failure to obtain a warrant. Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564). While a plurality of the Supreme Court has said that the discovery must be "inadvertent," id., there is no definitive holding on this point.

Because the roadblock here is a valid exercise of police power, testimony by the officer that he was

checking the car at the roadblock from outside the vehicle when he saw traces of green vegetation on the floor of the car that appeared to him to be marijuana, would support a finding that he had the right to be in the position to have that view. The discovery of the contraband in the car plus a large number of vehicles lined up at the roadblock are exigent circumstances justifying the failure to obtain a warrant. Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543, 39 ALR 790). See Harris v. United States, supra.

In ruling on the motion to suppress, the "burden of showing that probable cause exists is on the State." *Veasey v. State,* 113 Ga. App. 187, 189 (147 SE2d 515). But, "While the prosecution must bear the burden of persuasion with regard to probable cause for a warrantless search, the government need not establish probable cause beyond a reasonable doubt . . . Nor must a finding of probable cause rest upon evidence which is legally competent in a criminal trial." United States v. Rodgers, 442 F2d 902, 903 (5th Cir.).

In my opinion the trial court did not err in overruling the motion to suppress.

4. Conclusion.—Because in my opinion there was ample evidence to authorize the trial judge's finding that the roadblock was designed for the lawful purpose of checking licenses, registrations, etc., I do not have to reach the question whether a roadblock near a rock festival, even if admittedly conducted for the purpose of investigating whether the drivers of automobiles were fit to drive or were under the influence of drugs, is a valid roadblock. However, I feel constrained to note my view that a law enforcement check on the fitness of the driver is at least as important as a check on the fitness of the automobile. It is important to remember that no one has a right—constitutional or otherwise—to drive a car under all circumstances. There are requirements of fitness, both of automobile and driver, to be met as a condition precedent to that privilege. And yet, again without authority and *without discussing its own underlying premise to this effect,* the majority easily holds that the mere fact that the officers here were equipped to detect drug violation is reason enough to rule the

entire roadblock illegal.

I reiterate that it is not necessary here to reach the question of the validity of a roadblock established to detect drugged drivers. But I fault the majority opinion for its casual equation of a search-for-drugged-drivers with the prohibited "general search," because in my view, the two are entirely and without question different.

I would affirm.

I am authorized to state that Presiding Judge Eberhardt and Judge Stolz concur in this dissent.

PANNELL, Judge, special concurrence in dissent.

I agree that this court is bound by the cases cited in the dissent and the holdings therein as to the any evidence rule and credibility of witnesses being for the jury or judge trying cases without a jury. For that reason, I concur in the dissent.

ADDENDUM.

EVANS, Judge.

I wish to reply to the dissent in this case. The majority opinion has not held that the police lied in their testimony as to the purposes of the roadblock. If the dissenters choose to say the decision in this case so establishes, then the responsibility for saying the policemen lied must rest upon the dissenters—not upon the majority. When a judge grants a new trial on the general grounds, as it is his duty to do when the verdict is manifestly and palpably contrary to the evidence (see McMillan v. McCoy, 13 Ga. 320; Code § 70-202) that is not a judgment that the witnesses for the prevailing party lied. Surely the dissenters must know that!

Was the roadblock in this case a mere subterfuge for checking on illegal drugs? Only the policemen could testify as to their real *purpose, reason, motive, intention, scienter* in setting same up. The law permitted them to testify as to their motive or reason. But the investigation never stops there! *All of the evidence in the case, direct and circumstantial, must be considered* in order to arrive at the real motive. In *Royce & Co. v. Gazan,* 76 Ga. 79 (5), "A party may testify as to his intention. It is evidence to be considered, *but the facts—all the facts—are to be*

*considered, to arrive at the truth respecting his real motive."* See also *Childers v. Ackerman Constr. Co.,* 211 Ga. 350, 354 (86 SE2d 227), and citations. "It is well settled that circumstantial evidence may sometimes outweigh positive testimony." *Minter v. Kent,* 62 Ga. App. 265, 272 (8 SE2d 109).

The policemen testified they set up the roadblock to check on drivers' licenses, etc., and they actually did check on a few—a very few—drivers' licenses. But their real motive in setting up the roadblock is all too clearly revealed by the host of officers accompanying them to the scene of the roadblock including a magistrate, assistant prosecuting attorney, and trotting by their side was the marijuana dog, who could smell neither an expired drivers' license, nor expired automobile tag or sticker, and whose expertise was limited to smelling out marijuana. The message comes through loud and clear—subterfuge!

ADDENDUM TO DISSENT.

HALL, Presiding Judge.

The Attorney General of Georgia has filed an amicus curiae brief in this case on motion for rehearing. He states that "The decision rendered by this Court in the case sub judice adversely affects law enforcement agencies in and out of the State of Georgia, including the Uniform Division of the Georgia Department of Public Safety, known as the Georgia State Patrol. By virtue of his office the movant has sufficient interest to justify appearance amicus curiae in support of the law enforcement agencies of the State of Georgia."

We also note that " 'there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for a purpose of limited inquiry in the course of routine police investigations.' " United States v. Oswald, 441 F2d 44, 46 (9th Cir.). See also *Connor v. State,* 130 Ga. App. 74, 75 (202 SE2d 200).

It is ironic that at a time when the Supreme Court of the United States is moving in the direction of expanding the right of law enforcement officers to search persons incident to arrest for traffic offenses, this court

seeks to impose limitations upon the power of those officers to detect traffic offenses. See United States v. Robinson, 414 U. S. 218 (94 SC 467, 38 LE2d 427); Gustafson v. Florida, 414 U. S. 260 (94 SC 488, 38 LE2d 456).