## 32069. GAINES v. THE STATE.

Bowles, Justice.

The appellant, Robert Lee Gaines, was indicted on charges of armed robbery and murder. Also indicted in the occurrence was Carl Chavous, who pled guilty on both counts and received a life sentence. Following a jury trial, appellant was found guilty and sentenced to two consecutive life sentences.

The evidence presented shows, that on December 3, 1975, in the early morning hours, Rufus Gaines, a Dixie Service Station attendant, was shot and killed. The wound in his chest contained small lead pellets and shotgun wadding. The cigarette machine at the station had been opened and $24.14 had been taken.

Chavous was arrested and made a confession to the police on December 14, 1975, in which he implicated the appellant. According to Chavous, he and the appellant had been drinking at a local bar on December 2, 1975. At about 11 p.m., after being at the bar for about four hours, the two went to visit the appellant's girlfriend. The appellant and his girlfriend argued. When Chavous refused to back up appellant in the argument, appellant threatened to shoot him with a sawed-off shotgun he had hidden in his coat.

Following this argument, the appellant and Chavous returned to the bar where they stayed until about 2 a.m. On their way home, the two men passed the Dixie Service Station and appellant proposed robbing it. Chavous said that appellant threatened to kill him if he would not cooperate. Fearful of appellant's threats, Chavous approached the attendant and asked him for change. Appellant then grabbed the attendant, demanding money. When the attendant convinced him that there was no money, appellant made him unlock a cigarette machine. Appellant forced the attendant to lie down on the ground by the gasoline pumps, aimed a twelve gauge sawed-off shotgun at him, and shot him once. Chavous and the appellant then ran in different directions.

In a statement made to the police on January 29, 1976, Chavous changed his story. In this second statement, he took blame for the entire incident and said the

appellant was not present at the scene of the crime.

At appellant's trial, Chavous recounted his original story, in which the appellant had suggested robbing the service station and in which appellant had killed the attendant. The witness explained that the reason for changing his story was appellant's threat to kill him if he did not.

Other evidence presented at the trial which connected the appellant with the crime was testimony by a witness who had been in jail with the appellant and to whom appellant had confessed his guilt; testimony of the arresting officers who told of appellant's flight at the time of his arrest; testimony of the State Crime Laboratory microanalyst that the shot and wadding removed from the deceased had come from a twelve gauge shotgun.

The appellant had made a taped statement to the police on December 14, 1975, following his arrest. The tape was played in full for the jury. In the taped statement, appellant claimed that Chavous had suggested robbing the service station. Appellant waited while Chavous went into the station to ask the attendant for change. The attendant had none. Chavous came across the street to get sixty cents from the appellant. He returned to the station; forced the attendant to open the cigarette machine; and shot the attendant. Chavous then demanded that appellant come and get some cigarettes, threatening to kill him if he did not. Appellant admitted being present during the shooting, but denied killing anyone.

At trial, the appellant testified that his statement was procured through police brutality and that he had witnesses to this fact. No witnesses were produced and at trial, when asked the names of witnesses, he was unable to answer. The appellant testified that on the night of December 2, 1975, he had been drinking with alibi witness David O'Bryant. He had become intoxicated, returned home and passed out on the sofa. He testified that Chavous, who he had seen that evening, had asked the appellant to go with him to rob the Dixie Service Station. He did not accompany Chavous. Appellant's mother and sister testified that appellant was at home on December 2, 1975, from 11:30 p.m. until the next morning.

1. In his first enumeration of error, the appellant

complains that the court erred in denying his motion for a new trial because the evidence was insufficient to support the verdict.

After a careful review of the evidence, we find that there was sufficient evidence to support the jury verdict of guilty. Appellate courts will pass not on the weight, but on the sufficiency of the evidence to sustain a verdict. *Strong v. State,* 232 Ga. 294 (206 SE2d 461) (1974). If there is any evidence to support the findings of the jury, and no errors of law, the verdict should not be disturbed. *Proctor v. State,* 235 Ga. 720 (221 SE2d 556) (1975); *Marlow v. Burns,* 209 Ga. 255 (71 SE2d 520) (1952).

2. The appellant's second enumeration of error is that the evidence did not authorize a charge on confession, in that no confession was ever made by the defendant. A confession, argues the appellant, must admit every essential element necessary to establish the crime and must not provide a legal excuse or explanation.

At trial, the state produced the testimony of Robert Collins. Collins, who had been incarcerated with the appellant, testified that appellant told him he had killed the service station attendant by shooting him with a shotgun because the attendant had failed to give him the money he demanded. No justification for the killing was given, in the statement made.

In *Robinson v. State,* 232 Ga. 123, 126 (205 SE2d 210) (1974), this court held, "Although it has often been stated that to amount to a confession the statement of the accused must admit all the essential elements of the crime. . . , study of the cases distinguishing between admissions and confessions shows that the true determinant is whether the statement is offered by the accused as exculpatory or inculpatory."

Likewise, in the case of *Bonds v. State,* 232 Ga. 694 (208 SE2d 561) (1974), statements made by the appellant to the victim's children that he had shot their "old lady" authorized a charge on the law of confessions.

Under existing authority, the statement made by the appellant to Collins was a confession, and its introduction into evidence authorized a jury charge on confessions. The appellant's second enumeration of error is without merit.

3. Appellant argues that the trial court erred by not

charging the jury that the testimony of an accomplice is to be viewed with caution. No request was made for the court to so charge. At the end of the charge the court called upon counsel for objections; whereupon defendant's counsel objected to the court's charge on flight, but made no other objections.

The court had charged the jury on the necessity of corroboration of an accomplice's testimony, and how it was to view testimony of a witness whose credibility had been challenged. The charge to the jury, taken as a whole, adequately covered the issue of the impeachment of an accomplice.

The appellant in this case is precluded from raising the issue of omission of additional instructions to the jury because of his failure to submit a written request and failure to object to the omission. *Hill v. State,* 237 Ga. 523 (228 SE2d 898) (1976); *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976); *Birt v. State,* 236 Ga. 815-828 (225 SE2d 248) (1976).

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 25, 1977 —
DECIDED MAY 25, 1977.

*Archie L. Gleason,* for appellant.

*Richard E. Allen, District Attorney, Stephen E. Curry, Assistant District Attorney, Arthur K. Bolton, Attorney General, Isaac Byrd, Staff Assistant Attorney General,* for appellee.