## 55335. JONES v. THE STATE.

DEEN, Presiding Judge.

1. The accusation against the defendant for theft by taking was issued some months before the trial, and examination of the record reveals that the defendant was originally represented by another attorney. The fact that the defendant changed counsel and that the new counsel, who came in one day prior to the trial, requested a continuance which was denied, does not represent reversible error. The defendant, not the state, is chargeable with the delay in such a situation, absent a showing of why the late employment of counsel occurred. Neither was the fact that the accusation was amended to correct the name of the owner of the inspection stickers allegedly stolen from "Fred Hawkins" to "Fred Hawkins Chrysler Plymouth, Inc." cause for a continuance, it not appearing that this in any way weakened the presentation of the defense.

2. Robert Franklin, a state's witness, testified that the defendant, who worked for "Fred Hawkins Chrysler Plymouth," turned over to him 19 inspection stickers stolen from that employer and that he sold 16 of them. Another witness testified Franklin was apprehended when "a citizen came to me and advised me that Robert Franklin had had the inspection stickers selling them." It affirmatively appears that the defendant's part in the conspiracy was divulged by Franklin. The name of the citizen who identified Franklin need not be divulged where that witness' testimony was not necessary in

obtaining a conviction of this defendant. *Estevez v. State,* 130 Ga. App. 215 (2) (202 SE2d 686) (1973).

3. An oral motion to suppress the defendant's confession of the theft was overruled, over his objections that he was denied counsel prior to signing the confession, and that he was offered, as a reward for signing, an accusation alleging only one theft (the book of tickets) rather than 19 (each individual ticket). A GBI agent, two Cornelia police officers and another peace officer testified denying both that any such conversation took place and that any such question ever came up. Another person present during part of the proceedings, a justice of the peace, did not testify. Cross examination, however, pulled out of one of the officers the statement that "there was mention that he could be charged for each individual sticker . . . told him there could possibly be a warrant for each sticker." Another officer called in rebuttal said that the justice of the peace, in front of the defendant, "did say something to the effect that 19 charges or 19 counts versus 1."

This court, as a result of this testimony, feels there is at least a strong suggestion that the defendant was led to believe, whether intentionally or not, that he was gaining by his confession the advantage of a one-count rather than a nineteen-count accusation against him. This feeling is all the stronger in that the defendant, although the Miranda rights had been read to him, had no attorney at the time, and now contends that he asked for and was refused counsel prior to signing the confession.

The situation closely resembles that of the "marijuana dog" in *Swift v. State,* 131 Ga. App. 231 (206 SE2d 51) (1974), where Judge Evans, in a majority opinion, held that a roadblock conducted by a county drug abuse squad with the aid of a marijuana sniffing canine was operating as a subterfuge in claiming the spot check of automobiles was for the sole purpose of examining licenses and inspection stickers. The reversal was, however, overturned in *State v. Swift,* 232 Ga. 535 (207 SE2d 459) (1974), holding that "where there is a conflict in the evidence on the motion to suppress, the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order."

In view of the dissenting opinion, it is not out of place to consider what difference, if any, there is between the "clearly erroneous" and the "any evidence" rules. The Supreme Court in *Hall v. Ault,* 240 Ga. 585 (242 SE2d 101) (1978), citing two Court of Appeals cases that "the 'clearly erroneous' standard of the Administrative Procedure Act [is] the same as the 'any evidence rule' " again emphasizes that the court *"shall not* substitute its judgment for that of the board as to the weight of the evidence." Since in criminal cases we adopt the *any evidence* rule in the appellate court, although the fact arbiter in the trial court must be convinced *beyond a reasonable doubt,* where a Jackson-Denno hearing requires a finding based only on a preponderance of evidence (*Hurt v. State,* 239 Ga. 665 (238 SE2d 542) (1977)), it stands to reason that this is all the more reason for holding, as both the civil and criminal cases do generally, that a judgment of the trial court supported by competent evidence will be upheld in this court unless it is clearly erroneous, meaning legally insufficient.

The dissent here urges that a different meaning be given to the words "clearly erroneous" in Jackson-Denno hearings than either this court or the Supreme Court has ascribed to them in any other appellate proceeding. Phrases should not be given varying meanings depending on the type case in which they appear. The dissent relies on *Williams v. State,* 119 Ga. App. 557 (167 SE2d 756) (1969), where it was shown by undisputed evidence that the defendant was offered a benefit for his confession. Obviously, then, the admission of the confession under such circumstances was "clearly erroneous." That case and others like it involve no question of weighing evidence, but only the question of whether the evidence, in the view most favorable to establishing the point, is legally sufficient for that purpose. *Johnson v. State,* 235 Ga. 486, 493 (220 SE2d 448) (1975) (on which *Peek v. State,* 239 Ga. 422 (238 SE2d 12) cited by the dissent, depends), where it is stated that a jury instruction "was contrary to Ga. Code § 59-904 quoted above and was thus clearly erroneous." *Clearly erroneous* simply means erroneous *as a matter of law.* On the other hand, as stated in *Hurt v. State,* 239 Ga. 665, 668, supra (also cited in the

dissenting opinion): "This court does not pass on the weight of the evidence but on the sufficiency thereof to sustain the verdict." The Supreme Court has indeed stated in these cases that where the issue of voluntariness is supported by a preponderance of the evidence it cannot be held to be "clearly erroneous," but it has also said, time and again, that after verdict evidence in conflict will be construed to uphold it, and the presumptions will be exercised in its favor. "Appellate courts will pass not on the weight, but on the sufficiency of the evidence to sustain a verdict." *Gaines v. State,* 239 Ga. 98, 100 (1) (236 SE2d 55) (1977). The same presumptions will be applied, after verdict, to evidence regarding voluntariness of a confession as to any other evidence.

Nor does this approach work any change in Georgia law, or make more possible any unconstitutional result. Confessions have always been scanned with care and caution. Where the evidence as to voluntariness is in conflict, the issue is for the finder of fact, not for this court. " 'Before a confession. . . .is admissible in evidence, a prima facie showing as to its voluntary character must be made; and if this preliminary proof fails to make such a showing, the confession. . . must be excluded; . . . after such proper preliminary proof, the confession. . . becomes admissible, but the defendant may by evidence attack its voluntary character, and in that event the question as to voluntariness is for the jury; . . . where the voluntary character of a confession is made to appear by unequivocal evidence, the mere existence of attendant facts and circumstances, . . . which do not directly or necessarily dispute the prima facie showing, will not require exclusion of the confession from evidence, but the question as to its voluntary character should properly be left to the jury. . .; and . . . ordinarily the question as to whether confessions and incriminatory statements, unexceptionable in themselves, were made under previous undue influences still operating on the mind of a defendant, is not a question of law for the court, to be resolved by excluding such evidence, but is a question of fact for the jury . . .' " *Coker v. State,* 199 Ga. 20, 23 (33 SE2d 171) (1945) quoting from *Bryant v. State,* 191 Ga. 686, 710 (13 SE2d 820) (1941). Obviously that which is a

jury question on conflicting evidence may not be "clearly erroneous," although a jury might have found otherwise. If, on the other hand, it is erroneous as a matter of law it is both clearly erroneous and unsupported by any competent evidence. This being so, the distinction drawn in the dissent is unnecessarily narrow.

*Judgment affirmed. Quillian, P. J., Webb, Mc-Murray, Shulman, Banke and Birdsong, JJ., concur. Bell, C. J., concurs in the judgment only. Smith, J., dissents.*

SUBMITTED FEBRUARY 2, 1978 — DECIDED MAY 3, 1978 — REHEARING DENIED MAY 26, 1978 — ▮▮▮▮▮▮▮▮

*Kimzey, Kimzey & Carter, M. Keith York,* for appellant.

*Linton K. Crawford, Solicitor,* for appellee.

SMITH, Judge, dissenting.

I dissent. *State v. Swift,* 232 Ga. 535 (207 SE2d 459) (1974), and its "any evidence rule," are not applicable in this case; instead, the proper standard for review is the "clearly erroneous" test. Though there is "any evidence" which would support the determination of voluntariness, an examination of all the evidence and the totality of the circumstances shows that the determination of voluntariness was "clearly erroneous." I conclude, then, that the confession was improperly admitted and the appellant should be afforded a new trial.

In Division 3 of its opinion, the majority suggests that the evidence gives this court a "strong feeling" that the appellant's confession was induced by a promise of benefit. But the majority goes on to view itself as bound by the trial court's legal conclusion that the confession was voluntary, because there is *some* evidence, i.e., "any evidence," in the record to support such a conclusion. An analysis of *Swift's* "any evidence" rule shows it to be something of a criminal procedure anomaly which, fortunately, has never been held to apply beyond the factual setting of a motion to suppress hearing. An analysis of the factual setting of this case shows clearly

that no motion to suppress, and no suppression hearing, was involved. Hence *Swift* is not applicable. What the record does reveal is a Jackson-Denno[1] voluntariness hearing, and the unmistakable teaching of Georgia case law is that a trial court's determination of voluntariness after a Jackson-Denno hearing may be overturned by the appellate courts when the record shows that determination to be "clearly erroneous."

I. *State v. Swift:* Its Heritage and Scope

As the majority has pointed out, when *Swift* appeared before this court as *Swift v. State,* 131 Ga. App. 231 (206 SE2d 51) (1974), Judge Evans, speaking forcefully for the majority of a divided court, reversed the trial court and held that, despite what the trial court may have concluded, the evidence patently demonstrated that the roadblock which led to the search of Swift's van was not established for a legitimate purpose. On certiorari, the Supreme Court reversed this court, and held that despite the weight of the evidence, the trial court's denial of the motion to suppress must be deferred to because there is "any evidence" in the record to support it. Thus was born the *Swift* any evidence rule, but, as the following review of its genealogy shows, the *Swift* rule is an unlikely mutant child of relatively normal parents.

*Swift* placed its primary reliance on a predecessor in this court, *Brisendine v. State,* 130 Ga. App. 249 (203 SE2d 308) (1974). Also, *Swift* relied on *West v. West,* 228 Ga. 397 (185 SE2d 763) (1971), a case likewise relied upon in *Brisendine,* supra.

In Division 1 of the *Swift* opinion (232 Ga. p. 536) we find this statement:

"On motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. *West v. West,* [supra]."

---

[1] Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

The *West* case, relied on above, is a child custody case. It merely affirms a traditional rule of appellate review where the trial judge has had to sit as the final arbiter in a domestic situation. Interestingly, *West* itself relies upon early cases which did not state a rigid "any evidence" rule, but instead stated that the appellate court would defer unless the trial court had abused its discretion. E.g., *Kelly v. Kelly,* 146 Ga. 362 (91 SE 120) (1917); *Phillips v. Phillips,* 161 Ga. 79 (129 SE 644) (1925). There is more than semantical difference between an "any evidence" standard and an "abuse of discretion" standard; indeed, the facts of *Swift* strongly suggest that the trial court's determination was an abuse of discretion, though there was a thread or two of evidence to support it. More importantly, *West* is a civil case, with considerations and implications altogether different from the trial court's role as trior of fact in a motion to suppress setting; the jump from *West* to *Swift* is a quantum leap.

Finally, the conclusion in *Swift* is stated in the form of the following quote from *Brisendine v. State,* supra:

"The credibility of the witness is for the trial judge's determination, *Simmons v. State,* 111 Ga. App. 553, 554 (142 SE2d 308) [1965]; *Goggans v. State,* 14 Ga. App. 822 (82 SE 357) [1914]. His judgment will 'not be disturbed by a reviewing court if there is any evidence to support it.' *West v. West,* 228 Ga. 397, 398 (185 SE2d 763) [1971]. Therefore, where there is a conflict in the evidence on the motion to suppress, the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order. *Williams v. State,* 119 Ga. App. 557 (167 SE2d 756) [1969]; *Hunt v. State,* 8 Ga. App. 374, 377 (69 SE 42) [1910]."

An analysis of the cases cited in the above quotation shows that they provide scant support for the "any evidence" rule for reviewing suppression hearings, first announced in *Brisendine* and perpetuated in *Swift.*

The precedential weakness of *West v. West* has been discussed above. Both *Goggans v. State,* 14 Ga. App. 822, supra, and *Simmons v. State,* 111 Ga. App. 553, supra, involved criminal trials without a jury where the evidence was conflicting and an appeal alleged the

general grounds that the evidence did not support the verdict. In these cases where the defendant has waived a jury trial, the trial court's determination of fact must be deferred to if there is any evidence, for, as the cases say, it stands on the same footing as a jury verdict. These cases do not hold that the trial court's preliminary factual determinations in a jury trial case must be accorded the same deference. Even less apposite is *Hunt v. State,* 8 Ga. App. 374, supra, which held that there was evidence to support the *jury* verdict.

The other case cited in *Brisendine, Williams v. State,* 119 Ga. App. 557, supra, is factually closer than the above cases, but it still does not stand for the broad proposition stated in *Brisendine.* In *Williams,* the trial court on a motion to suppress hearing heard conflicting evidence as to whether the defendant's wife requested the police officer to enter her house to investigate a complaint, or whether the officer entered illegally without consent. The case held simply that the evidence authorized the judge to find, as a matter of fact, that the defendant's wife had requested the officer's entry. The case did not hold that the court's ultimate conclusion on the motion, a conclusion based on fact and law, would be held inviolate if there was any scant evidence in the record to support it.

It is apparent, then, that this court in *Brisendine,* and the Supreme Court in *Swift,* pulled together the laws regarding appellate review of jury verdicts in criminal trials, of judgments entered where a jury has been waived, and of judgments in civil child custody cases. And from this blend, these courts somehow extracted the rule that a trial court's conclusion following a motion to suppress — a conclusion involving a mixture of questions of fact and questions of federal and state constitutional and statutory law — will be accorded full appellate deference if there was a conflict in the evidence and the court's decision was supported by any of the evidence. The motion to suppress family might now be stuck with this mutant child, but I must dissent from the majority's attempt to clone another such mutant for the Jackson-Denno family. As the following analysis shows, the Jackson-Denno family already has a normal healthy child of its own, the "clearly erroneous rule."

## II. Appellate Review of Voluntariness Hearings: The "Clearly Erroneous" Test

For the reasons stated above, I feel the *Swift* standard should not now be extended for the first time into the area of voluntariness hearings. At any rate, the Supreme Court has established that appellate review of voluntariness hearings, i.e., Jackson-Denno hearings, is governed by the "clearly erroneous" test. In reviewing trial court determinations of voluntariness, the Supreme Court has stated that they will not be disturbed where, for example, the determination "is supported by a preponderance of the evidence" (*Pulliam v. State,* 236 Ga. 460, 464 (224 SE2d 8) (1976)), or, more frequently, where it is not "clearly erroneous." E.g., *Peek v. State,* 239 Ga. 422, 424 (238 SE2d 12) (1977); *Hurt v. State,* 239 Ga. 665, 669 (238 SE2d 542) (1977); *Miller v. State,* 240 Ga. 110, 112 (239 SE2d 524) (1977). I have found not one voluntariness case where the Supreme Court has applied an "any evidence" test.

Supreme Court cases upholding the trial court's determination of voluntariness based on the "clearly erroneous" rule are relatively common. On the other hand, cases reversing the trial court avoid any frank declaration that the trial court's determination was "clearly erroneous," and typically these cases refrain from stating in any way, shape, or form what standard of review has been applied. See, e.g., *Williams v. State,* 239 Ga. 327 (236 SE2d 672) (1977); and *Crawford v. State,* 240 Ga. 321 (240 SE2d 824) (1977).

But a close study of *Williams v. State,* supra, is very instructive. The published opinion in *Williams* is concise and simple. It sketches the facts; it states the rule of law from Code § 38-411 (also applicable in the present case) that a confession, to be admissible, "must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury"; and it holds the confession inadmissible by likening the case factually with *Johnson v. State,* 238 Ga. 27 (230 SE2d 849) (1976), where "the defendant agreed to tell what he knew in exchange for a recommendation of twenty years." *Williams v. State,* 239 Ga. 327, 328, supra. Thus, the Supreme Court based its legal conclusion on the factual

predicate that Williams' confession was exchanged as part of a plea bargain. What the opinion does not reveal is that in the trial court there had been a factual dispute over whether the statement was given as part of the plea bargain, or was given independently of the plea bargain. In a brief filed in behalf of the state by the Attorney General, this conflict in the evidence was noted with the following argument: "The court below necessarily concluded that the statement was not a quid pro quo of the bargain. As there is evidence to support the conclusion of the court below, the implicit finding of that court vis-a-vis the quid pro quo should not be disturbed." P. 5, Attorney General's brief on behalf of the state, *Williams v. State,* supra.

Thus, in *Williams,* there was "any evidence" which would support the trial court's conclusion that the statement had not been given in response to a hope of benefit, yet the Supreme Court rejected this conclusion, and rejected arguments by the state that the conclusion was cast in concrete because there was evidence to support it. What, then, was the standard of review applied to that case? It certainly was not the "any evidence" standard, for, to reach the conclusion there reached, the court necessarily must have rejected, as "clearly erroneous," the trial court's conclusion on the disputed facts.

III. The Present Case

There can be no doubt that this case involves a Jackson-Denno voluntariness hearing, not a motion to suppress hearing. A confession is not even assailable via a motion to suppress. *Jarrell v. State,* 234 Ga. 410, 417 (216 SE2d 258) (1975). No motion to suppress appears in the record of this case, and there is no indication that any such pre-trial hearing was held. During the trial, defense counsel objected to the admission of any statements by Jones on the grounds that they were involuntarily made, and the trial court then conducted the required hearing. Thus, the rules for Jackson-Denno hearings, rather than the rules for motion to suppress hearings, apply on review of the trial court's decision.[2]

---

[2] I do not profess to understand why there should be a

Reviewing the evidence in this case accordingly, I conclude that the evidence strongly supports the appellant's contention that his statement was given in response to intimations that he was gaining a one-count rather than a nineteen-count indictment. Even witnesses for the state admitted there was some mention of this outcome. I therefore would rule that the trial court erred in admitting the confession. In the words of the Supreme Court in *Williams v. State,* 239 Ga. 327, 328, supra, "This is the risk the state must take if it seeks to induce the cooperation of an accused, and amounts to no more than the withdrawal of a guilty plea. To rule otherwise would be contrary to the clear intention of the statute that a confession induced by the slightest hope of benefit or remotest fear of injury may not be used against a defendant."

I would reverse, and I therefore dissent from the judgment of affirmance.

---

different standard for reviewing the two types of proceedings. It seems, however, that virtually all types of preliminary determinations by the trial court in criminal cases, in virtually all jurisdictions, are reviewed under the "clearly erroneous" test, which gives the appellate court considerably more latitude than does the "any evidence" test. The "any evidence" test is universally used for reviewing jury verdicts, judgments by the court sitting without a jury, and, in Georgia, for reviewing rulings on motions to suppress.