## 55514. YOUNG v. THE STATE.

McMurray, Judge.

Defendant was indicted, tried and convicted for the offense of armed robbery. He was sentenced to serve a term of 20 years, the first 15 to be in confinement with the balance of five years to be served on probation. Thereafter, defendant's amended motion for judgment of acquittal notwithstanding the verdict, or in the alternative for a new trial, was denied after hearing. Defendant appeals. *Held:*

1. The robbery occurred in a Majik Market in Milledgeville, Georgia on Sunday night, May 15, 1977, at approximately 10:45 p.m. to 11 p.m. A lone male wearing a stocking over his head, wielding a pistol, entered the store. A deposit bag containing the weekend receipts was forcibly taken, and the gunman fled. The husband of the manager chased the gunman after being given a pistol by his wife, the store manager; shot at him, then entered his automobile and drove into the street. He caught a glimpse of some motion at a Camaro (black and white) automobile parked on the street and thought he saw the door shut. He was not certain that anyone entered the Camaro but he no longer saw the robber running down the street and suspected the gunman had entered the Camaro. He sought to ascertain from his headlights flashing on the Camaro as to whether or not there was an occupant in the automobile, but then decided to return to the store to protect his wife, who had called the police in the meantime. A police officer and the husband who had chased the robber returned to the Camaro parked about one-half block from the store on the street down which the husband had seen the gunman run. It was found to have been "straight-wired," would not crank due to insufficient battery power, and a watch was found on the floor-board.

The owner of the Camaro, a resident of Atlanta, identified it as her automobile, said that she had previously loaned it to the defendant but had refused to loan it to him Tuesday before the robbery. On Friday evening May 13, 1977, she testified the car did not crank, she approached the defendant to determine "what he had done to [her] car," who inspected it and informed her the wires had been cut and that the car would not start. The owner solicited the aid of another friend who informed her the wires had been cut, and it would be necessary to wait until Monday to get the car fixed. The next time the owner saw her Camaro was the following Tuesday (May 17, 1977), at the Milledgeville Police Department lot.

A witness testified that he had seen the defendant in Milledgeville on Sunday morning, May 15, 1977, in a black and white Camaro similar to the one pictured in a state's exhibit of the Camaro located in the vicinity of the

crime. This automobile was parked in this witness' yard until 8:30 or 9 p.m. on Sunday, May 15, when he returned to pick it up. A police detective testified that the defendant's fingerprints were found on a mirror and light switch which had been removed as evidence from the Camaro found near the scene of the crime.

A statement was obtained from the defendant signed by him in which he contended he had been in Atlanta the entire weekend of May 15; that he had assisted the owner of the Camaro in unsuccessful efforts to crank her car. A cellmate of the defendant was allowed to testify to a conversation he overheard the defendant have with other inmates concerning a robbery and that "Ronnie, was supposed to be with him, but he wasn't at home so he went on." One Ronnie Lewis testified that he and the defendant had been involved in several Atlanta area armed robberies, describing the modus operandi; that on a Sunday prior to the time defendant was locked up defendant had approached him "about doing a job," job meaning "robbing," that the defendant was in a white car which he left running because he couldn't cut it off as it was "straight wired." Lewis also testified that he was scared to do the Milledgeville job with "the hot car." Lewis' testimony was corroborated by a DeKalb County police officer and also by an admission or confession of the defendant with reference to the other crimes.

Defendant denied participation in the armed robbery and sought to establish an alibi, admitting however that he had been in Milledgeville on Sunday morning, having caught a bus to Macon and then obtained a ride with a friend named "Bruce" to Milledgeville. Bruce then departed with a female acquaintance, and he kept Bruce's 1976 Ford Granada and drove it to Milledgeville, where it was supposed to be picked up by Bruce later that day, later catching a bus back to Atlanta, arriving there about 3:30 a.m. Monday morning, contending however that he had driven to Atlanta during Sunday with his ex-wife.

Reviewing the voluminous evidence, of which the above is a mere excerpt, it cannot be said that the verdict was contrary to the evidence or strongly against the weight of the evidence. The above evidence in nowise demands a verdict of acquittal, nor did the trial court err

in denying the motion for judgment notwithstanding the verdict. The evidence was sufficient to support the verdict, its weight and credit being for the jury which found the defendant guilty as charged. *Gaines v. State,* 239 Ga. 98, 100 (1) (236 SE2d 55).

2. In the prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly distinct, independent and separate from that for which he is on trial even though it be a crime of the same sort, is irrelevant and inadmissible unless there be some logical connection between the two from which it can be said that proof of one tends to establish the other. See *Moore v. State,* 221 Ga. 636, 637 (146 SE2d 895); *Bacon v. State,* 209 Ga. 261 (71 SE2d 615); *Hamilton v. State,* 239 Ga. 72, 75 (235 SE2d 515). Here the evidence established the defendant as the perpetrator of the independent crime. There was considerable similarity in the modus operandi as between the two even though generally the other crimes were performed with an accomplice, Ronnie Lewis. The totality of the evidence here was sufficient to show identity, motive, plan, scheme, bent of mind and course of conduct. See *Foster v. State,* 230 Ga. 666, 667 (1) (198 SE2d 847); *Hicks v. State,* 232 Ga. 393, 397 (207 SE2d 30). The testimony of the accomplice, one Ronnie Lewis, was corroborated by other means independent of his testimony. Code § 38-121. Compare *Hill v. State,* 236 Ga. 831, 833 (225 SE2d 281). The defendant himself had made incriminating statements identifying himself as one of the perpetrators of four crimes, three of which Ronnie Lewis testified as to the same. There is no merit in the enumerations of error complaining of the admission in evidence of testimony of Ronnie Lewis and the DeKalb County detective as to wholly separate, independent and unrelated alleged crimes.

3. As to the DeKalb County detective who was allowed to testify as to the incriminating statements of the defendant as to other crimes, the state met the requirements of Code Ann. § 27-1403 (Ga. L. 1966, pp. 430, 431) as to newly-discovered information with reference to the existence of written admissions signed by the defendant, the state not being aware of same until the

middle of the trial. The trial court did not err in allowing the testimony of this DeKalb County detective to be submitted in evidence to identify the incriminating statements of the defendant as to other crimes. In addition, defense counsel was given additional time to interview this witness before this witness testified. The evidence does not disclose that the document comprising the DeKalb admissions of the defendant was allowed to go out with the jury as the defendant contends, as the transcript does not disclose it was even submitted in evidence although testimony as to the signature was allowed in evidence. There is no merit in this complaint.

4. The trial court did not err in allowing in evidence any and all testimony with respect to the "straight wired" Camaro and the circumstances showing the defendant's connection thereto so as to authorize an inference that said automobile was used in the commission of the offense charged. See *King v. State,* 230 Ga. 581, 582 (2) (198 SE2d 305); *Collins v. State,* 133 Ga. App. 716 (213 SE2d 19); *Strickland v. State,* 137 Ga. App. 419, 421 (2) (224 SE2d 87). All of such testimony was relevant to the armed robbery being tried here even if it incidentally put the defendant's character in issue that he had either stolen it or borrowed it without the owner's permission. See *Leutner v. State,* 235 Ga. 77 (218 SE2d 820); *Foster v. State,* 230 Ga. 666, supra; *Spurlin v. State,* 228 Ga. 2 (183 SE2d 765).

5. The use of the Camaro, owned by the neighbor of the defendant, could be inferred to have been part and parcel of the alleged armed robbery. It was not improper nor grounds for mistrial for the district attorney to allude to it in his opening statement. See *Katzensky v. State,* 228 Ga. 6 (1) (183 SE2d 749).

6. Based upon the evidence submitted here, the trial court did not err in charging the jury that any evidence of separate, distinct and independent armed robberies allegedly committed by the defendant could be used, "if at all, in the consideration of the case," as a circumstance to throw light upon "the intent, scheme, plan or bent of mind of the defendant." This charge is authorized by Code § 38-302. See *Moore v. State,* 221 Ga. 636 (1), supra; *Hamilton v. State,* 239 Ga. 72, 75, supra.

*Judgment affirmed. Quillian, P. J., and Webb, J., concur.*

Submitted March 7, 1978 — Decided June 23, 1978 —

*Gilmore, Waddell & Phillips, Thomas J. Phillips, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, J. Reginald Poss, Assistant District Attorney,* for appellee.